Citation Nr: 1228227 
Decision Date: 08/16/12 Archive Date: 08/21/12

DOCKET NO. 08-15 308 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for right ear hearing loss.

2. Entitlement to service connection for left ear hearing loss.

3. Entitlement to service connection for coccygeal contusion. 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

H. Yoo, Associate Counsel



INTRODUCTION

The Veteran had active service from July 1969 to July 1971. This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2007 decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

The issue of entitlement to service connection for tinnitus has been raised by the record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 

The issues of entitlement to service connection for left ear hearing loss and a coccygeal contusion are addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDING OF FACT

The evidence of record demonstrates that right ear hearing loss is related to active service.


CONCLUSION OF LAW

Right ear hearing loss was incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1101, 1110, 1112, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.385 (2011).



REASONS AND BASES FOR FINDING AND CONCLUSION

Preliminarily, the Board notes that the Veteran's April 2008 Substantive Appeal submitted indicated he was only appealing the claim of service connection for coccygeal fracture. However, in May 2008, the Veteran's representative submitted a statement indicating a desire to appeal the issues of coccygeal fracture and bilateral hearing loss. Accordingly, and to accord the Veteran the benefit of the doubt, all three issues are considered on appeal.

I. Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the claim for entitlement to service connection for right ear hearing loss, because the claim is granted in full, VA's duties to notify and assist are deemed fully satisfied and there is no prejudice to the Veteran in proceeding to decide the issue on appeal. See 38 U.S.C.A. §§ 5103, 5103A, 5107(West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156, 3.159 (2011).

II. Merits of the Claim

Generally, service connection may be established for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). In order to establish service connection, the following must be shown: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). In addition, sensorineural hearing loss may be presumed to have been incurred during service if it first became manifest to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1110, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Where there is a chronic disease shown in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). When a condition noted during service is not shown to be chronic, or the fact of chronicity in service is not adequately supported, then a showing of continuity of symptomatology after discharge is required to support the claim. 38 C.F.R. § 3.303(b). "[S]ymptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Savage v. Gober, 10 Vet. App. 488, 496 (1997). A layperson is competent to identify such disorders as varicose veins, tinnitus, and flat feet. Barr v. Nicholson, 21 Vet. App. 303, 310 (2007); Charles v. Principi, 16 Vet. App. 370, 374 (2002); Falzone v. Brown, 8 Vet. App. 398, 405 (1995). A layperson is not competent to identify medical conditions that require scientific, technical, or other specialized knowledge, such as in identifying bronchial asthma. Layno v. Brown, 6 Vet. App. 465, 469 (1994); Espiritu v. Derwinski, 2 Vet. App. 492, 495 (1992).

Medical evidence is generally required to establish a medical diagnosis or to address questions of medical causation; lay statements do not constitute competent medical evidence for these purposes. Espiritu v. Derwinski, 2 Vet. App. 492, 494 (1992). Lay testimony, however, is competent to establish a diagnosis where the layperson is competent to identify the medical condition, is reporting a contemporaneous medical diagnosis, or describes symptoms that support a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence).

Impaired hearing is considered to be a disability for VA purposes when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. §3.385.

The absence of in-service evidence of hearing loss is not fatal to a claim for service connection. Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Evidence of a current hearing loss disability (i.e., one meeting the requirements of 38 C.F.R. § 3.385, as noted above) and a medically sound basis for attributing such disability to service may serve as a basis for a grant of service connection for hearing loss. Hensley v. Brown, 5 Vet. App. 155, 159 (1993).

The Veteran claims he was exposed to loud noise during his military service, specifically while service in Vietnam, which has led to bilateral hearing loss.

The Veteran's military occupational specialty (MOS) was a light weapons infantryman with service in Vietnam from December 1969 to November 1970. In addition, he was awarded the National Defense Service Medal, the Purple Heart, the Combat Infantryman Badge, the Army Commendation Medal, the Vietnam Service medal with two Bronze Stars, and the Vietnam Campaign Medal, among others. 

The Veteran's service treatment records (STRs) are absent for any complaint, treatment, or diagnosis of hearing loss or any ear trauma. The Veteran's May 1971 separation examination report also reflects normal hearing.

A VA audiological examination was conducted in March 2007. The Veteran reported decreased hearing bilaterally. The Veteran stated he had military noise exposure while in the infantry from weapons fire, artillery, and explosions, and post-service noise exposure with hearing protection while employed at an automotive shop. The Veteran denied recreational noise exposure. 

On the authorized audiological evaluation, pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
10
10
15
15
25
LEFT
10
10
20
25
35

Speech audiometry revealed speech recognition ability of 92 percent in the right ear and 96 percent in the left ear. The VA examiner determined that the Veteran had normal hearing sensitivity at frequencies 25 Hz - 4000 Hz, sloping to a mild to moderately severe sensorineural hearing loss at 6000 Hz and 8000 Hz in the right ear. The examiner opined that the Veteran's current hearing impairment is not the result of acoustic trauma incurred during military service, noting that noise-induced hearing loss occurs at the time of exposure, not after the noise has ceased.

In a July 2012 private medical opinion, Dr. AMG noted a review of the claims file, and concluded that it was at least as likely as not the Veteran's hearing loss was the result of his military noise exposure. Dr. AMG stated that hearing loss due to acoustic trauma may be temporary, with hearing returning to normal after several days, but noted that if exposure occurs repeatedly the ears eventually lose the ability to bounce back resulting in permanent hearing degeneration. Dr. AMG further stated that hearing loss usually develops over a period of several years, and that the Veteran's hearing loss was consistent with noise induced hearing loss. Given the use of hearing protective gear while working in an automotive shop, Dr. AMG found that it would be reasonable to conclude that in-service noise exposure was a contributory factor to his current hearing loss.

The Board finds that service connection of right ear hearing loss is warranted based on the evidence of record. There is current right ear hearing loss as the March 2007 VA audiological examination noted speech recognition score of 92 percent. See 38 C.F.R. §§ 3.303(a), 3.385; Shedden, 381 F.3d at 1167. Furthermore, in-service noise exposure is conceded as it is consistent with the circumstances of the Veteran's combat service in Vietnam and the he has provided competent and credible lay evidence of noise exposure. See 38 U.S.C.A. § 1154(b) (West 2002); 38 C.F.R. § 3.303(a); Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (noting that the credibility of a witness may be impeached by a showing of interest, bias, inconsistent statements, consistency with other evidence), aff'd, 78 F.3d 604 (Fed. Cir. 1996); Layno v. Brown, 6 Vet. App. 465, 469-70 (1994) (holding that a lay witness is competent to testify to that which the witness has actually observed and is within the realm of his personal knowledge). 

Additionally, the most probative evidence of record demonstrates that the right ear hearing loss is related to service. Dr. AMG provided an opinion that the right ear hearing loss was related to service. That opinion was provided upon a review of the relevant medical evidence and supporting rationale was provided. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008) (noting that the central issue in assessing the probative value of a medical opinion is whether the examiner was informed of the relevant facts in rendering a medical opinion); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (holding that a medical opinion must be supported by an analysis that the Board can consider and weigh against contrary opinions). The Board thus accords significant weight to this opinion.

In contrast, the VA examiner's opinion was provided upon a review of the relevant medical evidence but was not as fully supported. Additionally, the examiner's rationale that hearing loss was unrelated to service because hearing loss was not demonstrated during service contravenes established law that hearing loss at discharge is not required. See Hensley, 5 Vet. App. at 159-60 (stating that hearing loss as defined by 38 C.F.R. § 3.385 need not be shown in service or at separation from service, service connection may still be established if medical evidence shows that it is actually due to incidents during service); 38 C.F.R. § 3.303(d) (providing that service connection may be granted for any disease diagnosed after discharge, when all the evidence establishes that the disease was incurred in service). The Board thus accords less weight to this opinion.

Accordingly, considering the doctrine of reasonable doubt, the preponderance of the evidence supports service connection for right ear hearing loss. Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990).


ORDER

Entitlement to service connection for right ear hearing loss is granted, subject to the laws and regulations governing the payment of monetary benefits.


REMAND

While the Board regrets the delay that a remand of this case will cause, after a careful review of the Veteran's claims file the Board finds that the issues on appeal must be remanded for further development and afford the Veteran every consideration with respect to the present appeal. 

A remand is required to provide the Veteran with examinations regarding his claim for service connection for left ear hearing loss and coccygeal fracture. The VA's duty to assist claimants to obtain evidence needed to substantiate a claim includes providing a medical examination when is necessary to make a decision on a claim. 38 U.S.C.A. § 5103A (d); 38 C.F.R. § 3.159(c)(4) (2011). Such development is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006) (noting that the third element establishes a low threshold and requires only that the evidence "indicates" that there "may" be a nexus between the current disability or symptoms and active service, including equivocal or non-specific medical evidence or credible lay evidence of continuity of symptomatology).

Regarding left ear hearing loss, another examination is warranted as the conclusions therein are unclear. Although the March 2007 VA audiological examination noted that pure tone and speech recognition testing did not meet the VA's criteria for impaired hearing under 38 C.F.R. §3.385, the examiner concluded that there was normal sloping to mild sensorineural hearing loss in the left ear. Additionally, Dr. AMG concluded that the left ear hearing loss revealed in the March 2007 VA audiological examination was the greatest at 4000 Hz, which was consistent with noise induced hearing loss. Given the contradictory findings and the positive nexus opinion from Dr. AMG, a new VA audiological examination is warranted to clarify the Veteran's current disability and obtain an opinion regarding the etiology. 

Regarding a coccygeal contusion, remand is required for clarification. A March 2007 VA examiner diagnosed with coccygeal contusion with no objective residuals. But a private physician, Dr. DE, submitted a June 2007 opinion diagnosed chronic lumbosacral neuralgia and coccydynia. Dr. DE noted that these diagnoses resulted from a coccidial injury during service and that this compressive type trauma is the likely genesis of today's lingering musculoskeletal diagnosis in his region, and that the subjective and objective findings were consistent with the biomechanics behind the injury as described. But the private opinion was not based upon a full review of the relevant medical records. Additionally, neither opinion addressed October 1970 STR that noted "two sutures [were] removed from superior aspect of anal fissure." It is unclear whether this treatment was related to the Veteran's claimed injury. 

In addition, the Veteran stated during the March 2007 VA examination that he received physical therapy, chiropractic therapy, and magnet therapy for his disability. These treatment records are not within the claims file. Additionally, Dr. DE's treatment records are not within the Veteran's claims file and must also be obtained. 

Accordingly, the case is REMANDED for the following action:

1. The AMC should contact the Veteran and request that he provide a completed release form (VA Form 21- 4142) authorizing VA to request copies of any treatment records from any private medical providers who have treated him for his claimed disabilities, including his private chiropractor, Dr. DE. 

After the Veteran has signed the appropriate releases, those records not already associated with the claims file should be obtained and associated therewith. All attempts to procure any outstanding treatment records should be documented in the claims file. If the AMC cannot obtain records identified by the Veteran, a notation to that effect should be included in the claims file and the Veteran and his representative should be notified of unsuccessful efforts in this regard, in order to allow him the opportunity to obtain and submit those records for VA review.

2. Once all outstanding records, if any, are obtained and incorporated into the claims file, the Veteran should be scheduled for a VA examination with the appropriate medical practitioner to determine the nature and etiological relationship between the Veteran's military service and his coccidial injury. Specifically, the examiner must provide an opinion, with supporting rationale as to whether it is at least as likely as not (i.e. a 50% probability or greater), that the coccygeal contusion is related to his active duty service. 

The examiner is asked to address all evidence of symptoms and any treatment for the coccygeal contusion within the Veteran's in-service, (specifically whether the October 1970 entry is related to a tail bone injury) and post-service treatment records, including the March 2007 VA examination and private medical opinion of record. The examiner is also asked to consider and address the Veteran's lay statements of history and continuity of symptoms.

All testing deemed necessary by the examiner should be performed and the results reported in detail. The rationale for all opinions expressed should be provided. The claims folder must be available for review by the examiner in conjunction with the examination and this fact should be acknowledged in the report. If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what, if any, additional evidence would be necessary before an opinion could be rendered.

3. The Veteran should be afforded an appropriate VA examination to determine the nature and etiology of his claimed left ear hearing loss. The examiner should state whether the Veteran has left ear hearing loss for VA purposes. Next, the examiner is requested to provide an opinion as to whether it is as least as likely as not (50 percent probability or greater) that any diagnosed left ear hearing loss, if such is found, is etiologically related to his period of active service, to include conceded in-service noise exposure. In doing so, the examiner should acknowledge and discuss the Veteran's lay statements, the findings of the VA audiologist in the March 2007 VA examination report, and Dr. AMG's July 2012 findings. 

All testing deemed necessary by the examiner should be performed and the results reported in detail. The rationale for all opinions expressed should be provided. The claims folder must be available for review by the examiner in conjunction with the examination and this fact should be acknowledged in the report. If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what, if any, additional evidence would be necessary before an opinion could be rendered.

4. After completion of the foregoing and undertaking any further development deemed warranted by the record, the Veteran's claim should be readjudicated based on the entirety of the evidence. If the claim remains denied, the Veteran and his representative should be issued a Supplemental Statement of the Case. An appropriate period of time should be allowed for response.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).




______________________________________________
K. MILLIKAN
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs