Citation Nr: 1522733 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 13-26 301 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Wether new and material evidence has been presented to reopen a claim for entitlement to service connection for right ear hearing loss.

2. Entitlement to service connection for right ear hearing loss.

3. Entitlement to a compensable rating for hearing loss.

4. Entitlement to a compensable rating for service-connected nasal disability, to include rhinitis and/or sinusitis. 


REPRESENTATION

Veteran represented by: The American Legion




WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

A. MacDonald, Associate Counsel


INTRODUCTION

The Veteran had active service from September 1975 to July 1981 and February 1983 to June 1993.

This appeal comes to the Board of Veterans' Appeals (Board) from rating decisions dated August 2011 and August 2012 by the Department of Veterans Affairs (VA) Regional Office (RO).

In December 2014, the Veteran appeared and provided testimony before the undersigned Veterans Law Judge (VLJ) via videoconference. A transcript of that hearing is associated with the claims file.

In reviewing this case, the Board has not only reviewed the Veteran's physical claims file, but also his file on the "Virtual VA" and "VBMS" systems to ensure a total review of the evidence.

The VBMS system includes additional medical records submitted after the file was transferred to the Board that have not been initially considered by the RO. However, the file includes a December 2014 written statement from the Veteran and his representative waiving RO consideration of any additional evidence submitted. See 38 C.F.R. 20.1304(c). Accordingly the Board finds appellate consideration may proceed without any prejudice to the Veteran.

The issues of entitlement to service connection for a psychiatric disorder and back disorder have been raised by the record in a July 2014 statement, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014).


FINDINGS OF FACT

1. Service connection for right ear hearing loss was previously denied in a November 2007 Board decision which is final.

2. Evidence obtained since the November 2007 Board decision is new and material to the claim.

3. The Veteran's current right ear hearing loss is related to his in-service noise exposure.

4. The Veteran did not demonstrate compensable hearing loss at any point during the period on appeal.

5. The Veteran's service-connected rhinitis resulted in symptoms not to exceed more than six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting.


CONCLUSIONS OF LAW

1. The November 2007 Board decision, which denied entitlement to service connection for right ear hearing loss, is final; new and material evidence has been submitted, and the claim is reopened. 38 U.S.C.A. §§ 5108, 7103 (West 2014); 38 C.F.R. §§ 3.156, 20.1100 (2014). 



2. The criteria for service connection for right ear hearing loss have been met. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.385 (2014).

3. The criteria for a compensable rating for bilateral hearing loss have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.85, Diagnostic Code (DC) 6100, 4.86 (2014).

4. The criteria for a rating not to exceed 30 percent for service-connected rhinitis have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.97, Diagnostic Code (DC) 6510-6514, 6522 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Right Ear Hearing Loss

The Veteran is seeking service connection for right ear hearing loss. This claim was previously denied in a November 2007 decision by the Board. In relevant portion, the Board found the evidence did not establish the Veteran had a current hearing loss disability for VA purposes in his right ear. He did not appeal this decision and the decision is final. 38 U.S.C.A. § 7103; 38 C.F.R. § 20.1100. Previously denied claims may be reopened by the submission of new and material evidence. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156.

Since the November 2007 Board decision, considerable new evidence has been added to the claims file, including the report from an April 2012 VA examination. This newly submitted VA examiner's report reflects the Veteran currently has a hearing loss disability for VA purposes in his right ear, and is therefore "material." See Shade v. Shinseki, 24 Vet. App. 110, 118 (2010). As such, new and material evidence has been presented and the claim is reopened.

Having reopened the claim, the Board will consider the claims on the merits. Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

As discussed, the April 2012 VA examiner's report reflects the Veteran currently has a hearing loss disability for VA purposes. 38 C.F.R. § 3.385. Therefore, the presence of a current disability is established.

The Veteran has consistently asserted that his current hearing loss, including his right ear hearing loss, is due to noise exposure during his active duty service. His DD214 reflects that, in addition to other duties, the Veteran served on a cannon crew. Therefore, he was exposed to very loud noise during his active duty service. 

In March 2003, the Veteran was provided with an examination in conjunction with his previous claim for the issue on appeal. Although that examiner did not show a hearing loss disability for VA purposes in the Veteran's right ear, the examiner opined the Veteran's loss of hearing acuity was related to noise exposure during his military service, providing evidence in support of the Veteran's appeal.

The Board has considered the report from the August 2011 VA examiner who opined that because the Veteran did not have right ear hearing loss at separation from active duty service, his current hearing loss was not related to his service. However, the law does not require that hearing loss be shown at separation for service connection to be established. See Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Accordingly, this examiner's report is not probative.

Additionally, on his April 2012 report, the most recent VA examiner checked the box indicating the Veteran's right ear hearing loss was not related to his military service. However, despite the box checked by the examiner, his rationale seemed to support service connection. Most notably, the examiner indicated the Veteran first reported noticing changes regarding his hearing in 1984, during his active duty service. Therefore, although the examiner checked the box indicating a negative nexus opinion, his report does not contain any rationale supporting that determination, and therefore is awarded less probative weight.

Accordingly, the claims file includes the opinion from one VA examiner that the Veteran's loss of hearing acuity is based on his exposure to noise during active duty service, and the reports from two different VA examiners providing less probative opinions his right ear hearing loss is not based on his in-service noise exposure. Based on all the foregoing, and affording all benefit of the doubt to the Veteran, the evidence reflects the Veteran's current right ear hearing loss was related to his active duty service. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. Accordingly, service connection for right ear hearing loss is granted.

Increased Ratings

The Veteran is also seeking increased ratings for his service-connected hearing loss and nasal disability (rhinitis/sinusitis). Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

The Board notes that while the regulations require review of the recorded history of a disability by the adjudicator to ensure an accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings. Where an increase in the disability rating is at issue, the present level of the veteran's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). It is also noted that staged ratings are appropriate for an increased rating claim whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Each of the Veteran's appeals is addressed in turn below.

Left Ear (now Bilateral) Hearing Loss

The Board notes the claim was initial developed as an increased rating for left ear hearing loss. However, as discussed, the Board is granting service connection for hearing loss in the right ear. Accordingly, the appropriate rating regarding the Veteran's hearing loss shall be assigned based on service-connected bilateral hearing loss. 

Under the regulations, the assignment of a disability rating for hearing impairment is derived by applying the results of audiometric evaluations to tables included in the rating schedule. 38 C.F.R. § 4.85. Evaluations of bilateral defective hearing range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination tests, together with the average hearing threshold level as measured by pure tone audiometric tests at the frequencies of 1000, 2000, 3000, and 4000 cycles per second (Hertz). To evaluate the degree of disability from bilateral defective hearing, the rating schedule establishes eleven auditory acuity levels designated from level I, for essentially normal acuity, through level XI, for profound deafness. Id.

When the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. Each ear will be evaluated separately. 38 C.F.R. § 4.86(a). Similarly, if the pure tone threshold is 30 decibels or less at 1000 Hz, and 70 decibels or more at 2000 Hz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral, and that numeral will be elevated to the next higher Roman numeral. 

Table VIA, "Numeric Designation of Hearing Impairment Based Only on Pure Tone Threshold Average," is used to determine a Roman numeral designation (I through XI) for hearing impairment based only on the pure tone threshold average. Table VIA will be used when the examiner certifies that use of the speech discrimination test is not appropriate because of language difficulties, inconsistent speech discrimination scores, etc., or when indicated under the provisions of Section 4.86, described in the preceding paragraph. 38 C.F.R. § 4.85(c). 

Throughout the period on appeal, the Veteran has asserted he experienced increased difficulties hearing in both ears. During his December 2014 hearing, he reported difficulties hearing his wife, and inability to discern sounds in public. The claims file also includes written statements from a friend and his wife describing his increased difficulties hearing. VA treatment records reflect the Veteran is currently assigned hearing aids, and had to have them adjusted on several occasions throughout the period on appeal.

The Veteran was provided with a VA examination in August 2011. Audiometric testing was conducted, and the relevant results are summarized in the chart below, with pure tone threshold recorded in decibels.



HERTZ



1000
2000
3000
4000
RIGHT
25
35
40
50
LEFT
60
55
60
60

The average pure tone threshold in the Veteran's right ear was approximately 38 decibels, while the average pure tone threshold in the Veteran's left ear was approximately 59 decibels. The physician also administered the Maryland CNC word list pursuant to VA regulations. See 38 C.F.R. § 4.85. The Veteran attained a 100 percent score in his right ear and a 96 percent score in his left ear.

A pure tone average threshold of 38 in the right ear with a 100 percent speech discrimination score equates to level I hearing acuity. 38 C.F.R. § 4.85, Table VI. A pure tone average threshold of 59 decibels in the left ear with a 96 percent speech discrimination relates to a level II hearing acuity. Id. Level I rating in the better ear and level II rating in the worse ear equates to a noncompensable rating for hearing impairment. 38 C.F.R. § 4.85, Table VII.

Because the Veteran's puretone thresholds in his left ear were 55 or more at each of the four specified frequencies, rating under Table VIA, for impairment based only on puretone threshold average, may be applicable for this ear if more beneficial to the Veteran. 38 C.F.R. § 4.86. Under Table VIA, the Veteran's pure tone threshold average of 59 decibels in his left ear equates to a level IV hearing acuity. However, Level I impairment in the better ear and level IV in the worse ear still equates to a noncompensable rating for hearing impairment. 38 C.F.R. § 4.85, Table VII. Therefore, the criteria for a compensable rating have not been met using Table VI or Table VIA.

The Board notes that, in Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007), the Court held that, relevant to VA audiological examinations, in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. In this case, the examiner specifically noted the effects of the Veteran's current hearing loss on his usual occupation and daily activities were difficulties hearing coworkers and during church. As such, the Board finds this examination is compliant with the Martinak requirements.

In April 2012, the Veteran was provided with an additional VA examination. Audiometric testing was conducted, and the relevant results are summarized in the chart below, with pure tone threshold recorded in decibels.



HERTZ



1000
2000
3000
4000
RIGHT
25
30
35
40
LEFT
65
60
60
60

The average pure tone threshold in the Veteran's right ear was approximately 33 decibels, while the average pure tone threshold in the Veteran's left ear was approximately 61 decibels. The physician also administered the Maryland CNC word list pursuant to VA regulations. See 38 C.F.R. § 4.85. The Veteran attained a 100 percent score in his right ear and a 72 percent score in his left ear.

A pure tone average threshold of 33 in the right ear with a 100 percent speech discrimination score equates to level I hearing acuity. 38 C.F.R. § 4.85, Table VI. A pure tone average threshold of 61 decibels in the left ear with a 72 percent speech discrimination relates to a level V hearing acuity. Id. Level I rating in the better ear and level V rating in the worse ear equates to a noncompensable rating for hearing impairment. 38 C.F.R. § 4.85, Table VII.

Because the Veteran's puretone thresholds in his left ear were again 55 or more at each of the four specified frequencies, rating under Table VIA may be applicable. 38 C.F.R. § 4.86. However, under Table VIA, the Veteran's pure tone threshold average of 61 decibels in his left ear equates to level IV hearing acuity, and still results in a noncompensable rating. Therefore, the criteria for a compensable rating have not been met using Table VI or Table VIA.

Regarding the Martinak requirements, this examiner specifically noted the effects of the Veteran's current hearing loss on his usual occupation and daily activities were wearing a hearing aid in his left ear, and requiring repetition at workplace and home. As such, the Board finds this examination is compliant with the Martinak requirements.

Finally, in November 2014 the Veteran underwent audiogram testing with a private audiologist, and the relevant results are summarized in the chart below, with pure tone threshold recorded in decibels.



HERTZ



1000
2000
3000
4000
RIGHT
30
35
-
40
LEFT
60
60
-
65

It does not appear the private audiologist administered any word recognition testing, including use of the Maryland CNC test, as required by VA regulations at 38 C.F.R. § 4.85. However, even considering the results of the audiometric testing alone, the criteria for a compensable rating have not been met. The average pure tone threshold in the Veteran's right ear was approximately 35 decibels, equating to a level I impairment under Table VIA. 38 C.F.R. § 4.85. The average pure tone threshold in the Veteran's left ear was approximately 62 decibels, equating to a level IV impairment. Id. As discussed, a Level I rating in the better ear and level IV rating in the worse ear equates to a noncompensable rating for hearing impairment. 38 C.F.R. § 4.85, Table VII.

The claims file does not include any other results from audiometric testing conducted on either or both ears. Accordingly, based on all the foregoing, the criteria for a compensable rating for service-connected bilateral hearing loss have not been met at any point during the period on appeal, the Veteran's claim is denied.

Increased Rating for Rhinitis/Sinusitis

The Veteran is also seeking a compensable rating for his service-connected nasal disability, currently assigned a noncompensable rating under DC 6522 for allergic rhinitis. Under this DC, a compensable rating is provided for allergic rhinitis with polyps, or without polyps but with a greater than 30 percent obstruction of the nasal passage on both sides, or complete obstruction on one side. 38 C.F.R. § 4.97.

In this case, the evidence does not establish the Veteran experienced polyps or obstruction of his nasal passage at any point during the period on appeal. During his August 2011 VA examination, the examiner specifically noted examination revealed no nasal obstruction or polyps. Moreover, during his June 2014 hearing, the Veteran's representative specifically stated there was no evidence of polyps or obstruction of the Veteran's nasal passage. See hearing transcript pg. 10. Accordingly, the criteria for a compensable rating under DC 6522 have not been met.

However, based on the evidence of this case, and affording all benefit of the doubt to the Veteran, the Board finds the criteria for a higher 30 percent rating has been met under the General Rating Formula for Sinusitis. 38 C.F.R. § 4.97, DCs 6510-6514. Under this formula, a 30 percent rating is assigned, in relevant part, for more than six non-incapacitating episodes per year of sinusitis characterized by headaches, pain, and purulent discharge or crusting. Id. A maximum 50 percent rating is assigned for sinusitis following radicular surgery with chronic osteomyelitis; or near constant sinusitis characterized by headaches, pain, and tenderness of affected sinus, and purulent discharge or crusting after repeated surgeries. Id.

In this case, the Veteran described experiencing symptoms of repeated clogged nasal passage and frequent mucus build up. His VA treatment records reflect a diagnosis of chronic sinusitis, and not rhinitis. Therefore, the Board finds rating these symptoms under the DC for sinusitis is appropriate.

In his August 2011 VA examination, the examiner indicated the Veteran experienced ten non-incapacitating episodes per year which were associated with headaches, interference with breathing, purulent discharge, hoarse voice, pain, and crusting. Therefore, the criteria for a higher 30 percent rating based on sinusitis have been met. 

The evidence does not establish the Veteran met the criteria associated with a maximum 50 percent rating under the Formula for Sinusitis at any point during the period on appeal. Most notably, the medical records do not reflect he underwent surgery for his rhinitis at any point, one of the criteria associated with a higher rating. Therefore, the criteria for a rating in excess of 30 percent have not been met.

Based on the foregoing, the criteria for a higher rating not to exceed 30 percent for the Veteran's service-connected rhinitis based on analogous rating to sinusitis have been met. To this extent, the Veteran's appeal is granted.



Extraschedular and TDIU Considerations

Regarding both these appeals, the Board has also considered whether referral for consideration of an extraschedular rating is warranted, noting that if an exceptional case arises where ratings based on the statutory schedules are found to be inadequate, consideration of an "extra-schedular" evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities will be made. 38 C.F.R. § 3.321(b)(1). The Court has held that the determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b) is a three-step inquiry. Thun v. Peake, 22 Vet. App. 111 (2008). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. If the criteria reasonably describe the veteran's disability level and symptomatology, then the veteran's disability picture is contemplated by the rating schedule and no referral is required. If the criteria do not reasonably describe the veteran's disability level and symptomatology, a determination must be made whether the veteran's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). See id. 

However, in this case, the medical evidence fails to show anything unique or unusual about the Veteran's hearing loss or rhinitis disabilities that would render the schedular criteria inadequate. The Veteran's main symptoms were complaints of difficulties hearing and ongoing symptoms of sinus problems. These symptoms were specifically contemplated in the schedular ratings that were assigned, and served as the basis for the increased rating assigned above. In this regard and consistent with the reasoning presented above, the Board finds that the rating schedule is adequate, even in regard to the collective and combined effect of all of the Veteran's service connected disabilities, and that referral for extraschedular consideration is not warranted under the circumstances of this case. Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014). 

The Board has also considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been raised. However, in this case the medical evidence reflects the Veteran continued to be employed throughout the period on appeal. Thus, the Board finds that Rice is inapplicable since there is no evidence of unemployability.

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to veterans. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). 

Notice must be provided to a veteran before the initial unfavorable agency of original jurisdiction (AOJ) decision on a claim for VA benefits and must: (1) inform the veteran about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the veteran about the information and evidence that VA will seek to provide; and (3) inform the veteran about the information and evidence the veteran is expected to provide. Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II). With respect to service connection claims, a section 5103(a) notice should also advise a veteran of the criteria for establishing a disability rating and effective date of award. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). 
 
In the present case, required notice was provided by a letters dated in March 2011 and February 2012, which informed the Veteran of all the elements required by the Pelegrini II Court prior to initial AOJ adjudication. The letters also informed the Veteran how disability ratings and effective dates were established. Under these circumstances, the Board finds that the notification requirements of the VCAA have been satisfied as to both timing and content.

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). VA and private treatment records have been obtained, as have service treatment records. 

In December 2014, the Veteran was provided with a hearing before the undersigned VLJ via videoconference. In Bryant v. Shinseki, the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. 3.103(c)(2) requires that the VLJ who conducts a hearing fulfill two duties to comply with the regulation. 23 Vet. App. 488 (2010). They consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. In this case, the VLJ fully explained the issue on appeal. The Veteran was assisted at the hearing by an accredited representative from The American Legion, and the VLJ and the representative asked questions regarding the nature and etiology of the Veteran's claimed disabilities. In addition, the VLJ sought to identify any pertinent evidence not currently associated with the claims file. No such pertinent evidence was identified by the Veteran or his representative. Neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2) or identified any prejudice in the conduct of the Board hearing. As such, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2), and that any error in notice provided during the Veteran's hearing constitutes harmless error.

The Veteran was also provided with a several examinations, the reports of which have been associated with the claims file. The Board finds the VA examinations were thorough and adequate, and provided a sound basis upon which to base a decision with regard to the Veteran's claims. The VA examiners personally interviewed and examined the Veteran, including eliciting a history from him, and provided the information necessary to evaluate his disabilities. Furthermore, neither the Veteran nor his representative has voiced any issue with the adequacy of the examinations.

As discussed, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.


ORDER

New and material evidence having been submitted, the application to reopen a claim of entitlement to service connection for right ear hearing loss is granted.

Entitlement to service connection for right ear hearing loss is granted, subject to the laws and regulations governing the award of monetary benefits.

Entitlement to a compensable rating for bilateral hearing loss is denied.

Entitlement to a rating not to exceed 30 percent for service-connected nasal disability, to include rhinitis and/or sinusitis, has been met, subject to the laws and regulations governing the award of monetary benefits.



____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs