Citation Nr: 1706048 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 09-24 099 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUES

1. Entitlement to service connection for tinnitus.

2. Entitlement to service connection for bilateral hearing loss.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

S. Freeman, Associate Counsel



INTRODUCTION

The Veteran served on active duty from May 1976 to May 1979 and from April 1981 to October 1981.

These matters come before the Board of Veterans' Appeals (Board) on appeal of an August 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky.

The Board remanded the claims to the agency of original jurisdiction (AOJ) for additional development in November 2012 and October 2015.


FINDINGS OF FACT

1. The evidence of record is in relative equipoise as to whether the Veteran's tinnitus is related to active service.

2. The Veteran's current bilateral hearing loss did not manifest during active service or to a compensable degree within one year of separation from active service, and the most probative evidence of record shows that the bilateral hearing loss is not etiologically related to active service.


CONCLUSIONS OF LAW

1. The criteria for service connection for tinnitus are met. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 5103, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.307, 3.309 (2016). 

2. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 5103, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duty to Notify and Assist

Pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a); see also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

With respect to the claim for service connection for tinnitus, the Board is granting in full the benefit sought on appeal. Given the favorable disposition of this action, which is not prejudicial to the Veteran, the Board need not address VA's duties to notify and assist as they pertain to the claim for entitlement to service connection for tinnitus. See Bernard v. Brown, 4 Vet. App. 384 (1993).

A VA letter issued in December 2007 satisfied the duty to notify provisions with respect to the claim for service connection for bilateral hearing loss, and notified the Veteran of the factors pertinent to establish said claim. The record includes service treatment records (STRs), VA and private medical records, Social Security Administration (SSA) records, and lay statements in support of the claim.

The Board has considered the Veteran's statements and has carefully perused the evidence for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim for which VA has a duty to obtain.

The Veteran was provided a VA audiology examination in May 2008 in connection with his claims on appeal, which the Board determined was inadequate. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159(c)(4). When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Consequently, the Board requested in its November 2012 remand that a new VA examination be undertaken. This was accomplished in May 2016. The Board finds that the May 2016 VA examination report is adequate to decide the merits of the case because the examiner was provided with an accurate history, the Veteran's history and complaints were recorded, and the examination report set forth detailed examination findings, to include a nexus opinion, with adequate bases for the opinion. 38 C.F.R. § 3.159(c)(4); Barr, 21 Vet. App. at 307.

The Board finds that all relevant facts have been properly and sufficiently developed in this appeal and no further development is required to comply with the duty to assist the Veteran in developing the facts pertinent to the claim for service connection for bilateral hearing loss. Essentially, all available evidence that could substantiate the claims has been obtained.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009).

Accordingly, the Board finds that VA has satisfied its duties to notify and assist the Veteran under governing laws and regulations.

Stegall Considerations

As noted in the Introduction, the Board remanded this case in November 2012 and October 2015. The November 2012 Board remand directed the AOJ to obtain records associated with the Veteran's receipt of SSA benefits, provide the Veteran a VA audiological examination, and then readjudicate the claims and issue a supplemental statement of the case, if warranted. Pursuant to the November 2012 Board remand, the AOJ obtained and associated with the record the Veteran's SSA records and scheduled the Veteran for a VA audiological examination. However, the Veteran did not appear for the scheduled examination. Therefore, the AOJ readjudicated the Veteran's claims in an April 2013 supplemental statement of the case.

In the October 2015 remand, the Board found that there was good cause for the Veteran not appearing at the previously scheduled VA audiological examination, and therefore directed the AOJ to schedule the Veteran for another VA audiological examination, including a controlled speech discrimination test (Maryland CNC) and a puretone audiometry test; and then readjudicate the issues on appeal and send the Veteran a supplemental statement of the case, if warranted. The Board finds that the AOJ complied with the remand directives as the Veteran was provided a VA examination in May 2016; the AOJ obtained SSA records pertaining to the Veteran; and the AOJ readjudicated the issues on appeal in a July 2016 supplemental statement of the case. See Stegall v. West, 11 Vet. App. 268, 271 (1998); see also Dyment v. West, 13 Vet. App. 141 (1999) (noting that a remand is not required under Stegall where the Board's remand instructions were substantially complied with).

Service Connection

The Veteran seeks service connection for a bilateral hearing loss disorder and tinnitus. He asserts he has bilateral hearing loss and tinnitus as a result of his noise exposure during service, to include exposure to engine noise and the tools that were used in the motor pool. He further contends that his noise exposure came from firing weapons during basic training, and that he did not use any hearing protection in the military, even on the firing range. See, e.g., VA examination report dated in May 2008. Similarly, he alleges he has constant tinnitus in his right ear, that his tinnitus began "sometime when he was in the army," and he has had tinnitus for many years. Id. Review of the service personnel records confirm the Veteran's occupational specialty during service was as a power generator and wheel vehicle mechanic.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. §§ 1131; 38 C.F.R. § 3.303(a) (2016). For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease shown as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b) (2016). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2016). When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Determinations as to service connection will be based on review of the entire evidence of record, to include all pertinent medical and lay evidence, with due consideration to VA's policy to administer the law under a broad and liberal interpretation consistent with the facts in each individual case. 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a).

While medical evidence is generally required to establish a medical diagnosis or to address other medical questions, lay statements may serve to support claims by substantiating the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372, 1376 (Fed Cir. 2007); see Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (lay evidence is potentially competent to establish the presence of disability even where not corroborated by contemporaneous medical evidence); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009) (in some cases, lay evidence will be competent and credible evidence of etiology).

The Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan, 451 F.3d 1331. The evaluation of evidence generally involves a 3-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. Barr, 21 Vet. App. at 308 (observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). The third step of this inquiry requires the Board to weigh the probative value of the proffered evidence in light of the entirety of the record.

Service Connection for Tinnitus

The Board first turns to the Veteran's claim for entitlement to service connection for tinnitus.

At the outset, the Board finds competent evidence of a current disability. During his May 2008 VA examination, the Veteran informed the examiner he has had constant tinnitus in his right ear and has had tinnitus for many years. As a layperson is capable of observing tinnitus, the Board finds the Veteran's reports to be sufficient for a finding of a current disability, such that the first Shedden element has been met. See Charles v. Principi, 16 Vet. App. 370, 374 (2002) (asserting that a layperson is capable of observing tinnitus).

The Board also finds competent and credible evidence of noise exposure during service. The Veteran served in active duty as a power generator and wheel vehicle mechanic from May 1976 to May 1979 and from April 1981 to October 1981. In his May 2008 lay statements, the Veteran reported that, in addition to being a mechanic and being exposed to loud noise from the motor pool and engine noise, he fired weapons during basic training, which constantly exposed him to loud noise.

The Veteran's testimony is both competent and credible. A veteran is competent to report that which he perceives through the use of his senses, including exposure to loud noises. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); Charles, 16 Vet. App. 370 (finding the veteran competent to testify to symptomatology capable of lay observation); Layno v. Brown, 6 Vet. App. 465, 469 (1994) (noting competent lay evidence requires facts perceived through the use of the five senses). Furthermore, the Veteran's reports are largely supported by the evidence of record. His Certificate of Release or Discharge from Active Duty (DD-Form 214) confirms the Veteran's assignment and occupation during service, and further denotes he was assigned to Field Artillery and that his primary specialty was a power generator and wheel vehicle mechanic in the United States Army. It is entirely plausible that the Veteran could have been exposed to loud noise when carrying out his requisite in-service duties and required training, such that the Veteran's descriptions of the in-service events are consistent with the nature of his service. 38 U.S.C.A. § 1154(a). Additionally, the Veteran's reports are well-documented and unvarying throughout the record. Accordingly, the Board finds competent and credible evidence that the Veteran experienced in-service noise exposure, such that the second Shedden element has been met. 

Evidence of record addressing the possible relationship between the Veteran's current tinnitus and his in-service injury includes the Veteran's statements and the May 2016 VA audiological examiner's negative nexus opinion. The May 2016 VA examiner opined that it is less likely than not that the Veteran's tinnitus was caused by or a result of military noise exposure. In support of this conclusion, the examiner noted that there was no evidence of noise injury during service considering that there was no significant positive threshold shift when comparing enlistment and separation examinations. The Board affords limited probative value to this opinion, which is based solely upon a comparison of the Veteran's entrance and exit examinations and does not appear to consider the Veteran's reports of in-service noise exposure, his contention that his tinnitus began sometime when he was in the army, or the lack of hearing protection used by the Veteran during service. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000); see also Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (holding that the probative value of a medical opinion comes from the "factually accurate, fully articulated, sound reasoning for the conclusion").

In contrast, during the May 2008 VA examination, the Veteran asserted that he has constant "whistling" in his right ear, and indicated it started sometime when he was in the army. The Board finds this to be competent and credible evidence of in-service noise exposure. The Veteran indicated his noise exposure occurred during his first enlistment and cited several examples of noise exposure during service, to include: exposure to noise as a result of firing weapons during basic training, exposure to loud noise while working as a mechanic, and exposure to diesel engines while working as a mechanic in the motor pool. See, e.g., May 2008 VA examination report. Tinnitus is readily observable by laypersons and medical expertise is not required to establish its existence or continuation. See Charles, 16 Vet. App. 370. Therefore, the Veteran is competent to describe his tinnitus symptomatology, and such subjective complaints have been documented by the medical evidence of record, to include the May 2016 VA examination report. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005).

The Veteran has not indicated that he sought treatment for tinnitus during service, and the Veteran's service treatment records are absent for any reference to tinnitus. The first recorded evidence of the Veteran reporting tinnitus in the record is at his compensation and pension examination, which was conducted in May 2008, 27 years after his separation from active service. However, the absence of contemporaneous evidence alone does not equate to contradiction of the Veteran's assertions that he has experienced symptoms continuously since active service. See Buchanan, 451 F.3d at 1337. Therefore, the Board finds the Veteran credible in his assertions that his tinnitus had its onset during his active service and has continued since that time despite the lack of contemporaneous medical evidence.

The Board cannot afford greater probative weight to the May 2016 VA examiner's medical opinion than to the Veteran's competent and credible statements as to the presence and onset of his tinnitus. The VA examiner's opinion does not address the Veteran's statements regarding the onset of the tinnitus to his time in active service. It also does not reflect consideration of the possibility that the Veteran's tinnitus may be a delayed result of his in-service noise exposure. Tinnitus, as an organic disease of the nervous system, may be service connected where it is shown to be chronic and continuous since active service or where it manifests to a compensable degree within one year of service. See 38 C.F.R. §§ 3.303(b), 3.309(a). In this case, the Veteran's competent and credible statements establish that his tinnitus had its onset during his active service and has continued since that time. Accordingly, the Board finds that the evidence is at least in relative equipoise as to whether the Veteran's tinnitus is etiologically related to his active service. The benefit of the doubt is resolved in the Veteran's favor, and the Board therefore concludes that service connection for tinnitus must be granted. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Service Connection for Bilateral Hearing Loss

The Board now turns to the Veteran's claim for entitlement to service connection for bilateral hearing loss.

The Veteran contends that he has current bilateral hearing loss that is related to his active service. He reports that, during his active service, he worked as a power generator and wheel vehicle mechanic in the army and was exposed to engine noise and noise from the tools that were used in the motor pool without hearing protection. He also reports noise exposure from firing weapons during basic training. The Veteran reports that prior to the service he worked in construction and restaurants. He states that he has not worked since 1979. However, his April 2015 Audiology Consult Response from the Lexington VA Medical Center states, "he reported noise exposure for four years in the military from working around large trucks and as a civilian for two years working in a sawmill." His May 2008 VA examination states, "as a civilian, the veteran denied any occupation for more than a one month period. He stated that he has been unable to work for most of his life. He stated that his longest work period was as a cab driver for one month. He reported that he also worked at a Tool and Dye Factory for one month. Otherwise he stated that he had various manual labor jobs that lasted just a few days."

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz (Hz) is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. Additionally, the threshold for normal hearing is between 0 and 20 decibels and higher thresholds show some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993).

At the May 2008 VA audiological examination, puretone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
20
15
25
40
LEFT
20
25
15
25
35

Speech audiometry revealed speech recognition ability of 100 percent in the right ear and of 92 percent in the left ear.

The Veteran's May 2008 VA examination report indicates he had 40 decibels at 4000 Hertz for his right ear, and thus establishes a current disability for that ear. Also, he had a 92 percent speech discrimination score in the left ear at his May 2008 examination, and thus has a current disability for that ear. 

At the May 2016 VA audiological examination, puretone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
20
10
20
45
LEFT
15
15
5
15
40

Speech audiometry revealed speech recognition ability of 96 percent in the right ear and of 96 percent in the left ear.

The May 2016 examination shows the Veteran had 45 decibels at 4000 Hz in his right ear, and 40 decibels at 4000 Hz in the left ear; and therefore establishes a current disability for both ears. Thus, the Veteran has a current bilateral hearing loss disability pursuant to 38 C.F.R. § 3.385, and the first element of service connection is established.

Regarding the second element of service connection, the absence of in-service evidence of hearing loss is not fatal to a claim for service connection. Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Evidence of a current hearing loss disability (i.e., one meeting the requirements of 38 C.F.R. § 3.385 , as noted above) and a medically sound basis for attributing such disability to service may serve as a basis for a grant of service connection for hearing loss. Hensley, 5 Vet. App. at 159. Moreover, to establish service connection for sensorineural hearing loss, the Veteran is not obligated to show that his hearing loss was present during active service. However, if there is insufficient evidence to establish that a claimed chronic disability was present during service or during the one year presumptive period thereafter, the evidence must establish a nexus between his current disability and his in-service exposure to loud noise. Godfrey v. Derwinski, 2 Vet. App. 352 (1992).

The Veteran's service treatment records do not reflect any complaint, diagnosis, or treatment for hearing loss. The May 2008 VA examiner found the Veteran's in-service audiometric testing conducted during enlistment examination, dated in May 1976, showed normal hearing through 4000 Hz in both ears. The separation examination, dated in April 1979, also showed normal hearing through 4000 Hz. The Veteran contends that his noise exposure occurred during his first enlistment. The examiner noted that at the time of the Veteran's second enlistment examination, dated in January 1981, the Veteran demonstrated normal hearing through 6000 Hz.

In addition, in the report of medical history that accompanied each of the in-service examinations, when asked, "have you ever had or have you now hearing loss in either ear," the Veteran wrote a "no" response for that inquiry. On the Veteran's separation examination from his second enlistment, dated in September 1981, the examiner found, "he was tested through 8000 Hz in both ears and there was no indication of any hearing loss at any frequency band." The evidence indicates the Veteran did not sustain any damage to his ears or hearing while in the Army. The first evidence of hearing loss was found on the Veteran's May 2008 VA examination. The test showed that 27 years after military discharge the Veteran demonstrated a mild sensorineural hearing loss at 4000 Hz bilaterally, and at 8000 Hz, a moderately severe sensorineural hearing loss on the right and moderate sensorineural hearing loss on the left. The May 2016 VA examiner opined that the Veteran's hearing loss is less likely as not due to noise exposure during military service. She explained that her opinion was based on audiometric data obtained during service, the configuration of his hearing loss, and the Veteran's reported history of noise exposure during and post service. The Board notes that the audiological readings on the Veteran's separation examinations do not reflect hearing loss per Hensley, or a hearing loss disability for VA purposes per 38 C.F.R. § 3.385, on discharge from active service.

Thus, both the May 2008 and May 2016 VA examiners found that, when the results of the Veteran's hearing examination conducted in May 1976 are compared to the results of the separation examination conducted in September 1981, there were no significant changes found in the Veteran's hearing thresholds. Furthermore, there was no evidence of hearing loss found in the service treatment medical records or in the years immediately following his military discharge.

As previously stated, the earliest dated evidence of record demonstrating a bilateral hearing loss disability is the May 2008 VA examination. That test showed that 27 years after military discharge the Veteran demonstrated a mild sensorineural hearing loss at 4000 Hz bilaterally and a moderately severe sensorineural hearing loss at 8000 Hz on the right and moderate sensorineural on the left. Therefore, the Board finds the Veteran does not satisfy the criteria for service connection for his current bilateral hearing loss on the basis of in-service occurrence or on a presumptive basis as a chronic organic disease of the nervous system. See 38 C.F.R. §§ 3.303, 3.307(a) (3), 3.309(a).

Nevertheless, the Board finds that the Veteran had an in-service injury, consisting of acoustic trauma from noise exposure. As noted above, the Veteran's reports of exposure to engine noise and firing weapons during basic training are credible as they are consistent with his service in the United States Army as a power generator and wheel vehicle mechanic. See 38 U.S.C.A. § 1154(a).

In reviewing all of the evidence of record, the Board finds that the most probative evidence weighs against service connection for the bilateral hearing loss. Although the Board finds that the Veteran experienced an in-service injury consisting of acoustic trauma from noise exposure, the most probative evidence does not relate the current bilateral hearing loss disability to active service. In this respect, the Board assigns weight to the May 2008 examiner's opinion as it relates to in-service incurrence of hearing loss. However, the Board finds that the May 2008 examiner did not adequately address the in-service noise exposure. Therefore, the Board assigns more probative weight to the May 2016 examiner's opinion because it adequately addressed the in-service noise exposure. In addition, the Board finds that the May 2016 examiner considered the Veteran's reported history, including his account of in-service noise exposure, noted and cited to evidence reviewed, and provided appropriate reasoning for her conclusion, which was not based solely on evidence of normal audiological testing at separations. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). The May 2016 VA examiner cited to an Institute of Medicine (IOM) study that says, "hearing loss occurs immediately after noise exposure and not on a delayed basis."

Regarding the final element of service connection, the Board acknowledges that the absence of in-service evidence of hearing loss is not fatal to a claim for service connection. Ledford, 3 Vet. App. at 89. However, in this case, there is no probative evidence of record to establish such a nexus. The Board recognizes that the Veteran is competent to report a history of hearing problems, which is within the realm of his personal experience. Layno, 6 Vet. App. at 469; Charles, 16 Vet. App. 370. Nonetheless, he has not shown that he possesses the necessary clinical expertise to comment on complicated medical issues, such as the nature and etiology of hearing loss. See 38 C.F.R. § 3.159(a)(1) (competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions). Accordingly, he is not competent to diagnose hearing loss for VA disability purposes or offer an opinion as to its etiology. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Therefore, his opinion in that regard is due no probative value, and does not weigh against the probative value of the VA examiners' opinions.

Additionally, the Veteran's current statements regarding the onset of his hearing loss are inconsistent with other evidence of record. His service treatment records do not reflect any complaint, treatment, or diagnosis of decreased hearing, and he specifically denied having hearing loss shortly before his service discharge. The Veteran first mentioned his noise exposure caused hearing loss during his May 2008 VA examination. As indicated above, according to the probative statements provided by the VA examiners, each of the examinations upon his entry and separation from the military showed auditory thresholds within normal limits bilaterally on all frequencies tested with no significant thresholds shifts. All this weighs against any assertion that hearing loss began in service. Therefore, the Board finds that the preponderance of the evidence is against a finding that the Veteran's bilateral hearing loss had its onset during his active service.

Therefore, the Board finds that the Veteran's current bilateral hearing loss did not manifest during active service or to a compensable degree within one year of separation from active service, and that the most probative evidence of record shows that the bilateral hearing loss is not etiologically related to his active service. As such, the preponderance of the evidence is against the claim for entitlement to service connection for bilateral hearing loss, and the benefit sought on appeal is accordingly denied. See 38 U.S.C.A. § 5107 (b) (West 2014).


ORDER

Service connection for tinnitus is granted.

Service connection for bilateral hearing loss is denied.



____________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs