Odra LEDFORD, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 91–903.

United States Court of Veterans Appeals.

Submitted Feb. 6, 1992.

Decided Aug. 7, 1992.

Odra Ledford, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Michele Russell Katina were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Associate Judges.

FARLEY, Associate Judge:

In its decision of May 7, 1991, the Board of Veterans' Appeals (Board or BVA) denied appellant's claim for service connection for defective hearing. Appellant filed a timely Notice of Appeal on May 31, 1991, and an informal brief on September 24, 1991. On October 24, 1991, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of proceedings pending a ruling on this motion. Appellant did not respond to the Secretary's motion.

Having considered the record in this case, including appellant's brief and the Secretary's motion, the Court concludes that the BVA erred as a matter of law by failing to apply the correct legal standard to the facts of this case and failing to provide a statement of the reasons or bases for its determinations. Therefore, the motion of the Secretary will be denied, the BVA decision vacated, and the matter remanded to permit a readjudication of appellant's claim and the inclusion of a statement of the reasons or bases for the findings by the Board upon readjudication.

I.

Appellant served in the United States Army from February 7, 1962, to February 6, 1964. R. at 34. Appellant did not indicate any ear or hearing difficulty on his induction physical examination (R. at 3), and the examination report indicates that

his hearing was 15/15 in both ears. R. at 2. No audiometric examination was performed. *Id.* Appellant's service medical records contain no indication of either complaints of or treatment for hearing loss.

However, the report of appellant's separation physical examination (R. at 29, 47, 50, 71), bears the notation "10" for the left ear under 4000 Hz in block 71 which is used to record the results of an audiometric examination. Moreover, in block 74 there is a notation of "partial deafness rt ear high tones." In block 76, the physical profile for hearing is indicated as "T3."

Nine months after appellant left service, on November 25, 1964, he underwent a Veterans' Administration (now the Department of Veterans Affairs) (VA) compensation examination based upon a complaint of a heart problem. R. at 35. The resulting diagnosis was: "Rheumatic heart disease, inactive, compensated, Class II." R. at 44. The veteran received a service-connected disability rating of 30% from February 7, 1964.

By letter dated October 12, 1989 (R. at 45), appellant forwarded copies of his separation physical examination and subsequent hearing evaluations from Fort Knox, Kentucky, to the VA Regional Office (RO) and requested a "further evaluation." The letter was followed by the submission of a Statement in Support of Claim, dated January 12, 1990, which resubmitted the same medical records and, noting that he had received "no word or correspondence" from the VA, requested the scheduling of "your own hearing test at the VA Medical Center." R. at 48. In a rating decision dated March 2, 1990, appellant's claim for service connection for defective hearing was denied. R. at 54–55. The rating board concluded that the "finding on the separation examination of a decibel loss of 10 in the left ear at the 4000 range is not diagnostic of defective hearing for VA purposes." R. at 55.

By letter dated March 20, 1990, appellant noted his disagreement with the decision of the rating board and submitted additional reports of audiometric examinations performed by his employer. R. at 58. By letter dated March 27, 1990, an additional audiometric examination report was submitted. R. at 74–75. On April 3, 1990, the denial of service connection was confirmed by the RO with the notation that "Audio rpts show vet w/bil hearing loss beginning 7–12–66 & continuing to the present time." R. at 76.

In its decision of May 7, 1991, the Board noted that the separation examination did not contain "audiometric findings to support" the diagnosis of a possible loss of hearing in the right ear, deemed it to be "significant" that the veteran did not complain about a hearing problem when he was examined for his heart condition in 1964, and found itself "unable to grant service connection for his current defective hearing without a showing of either treatment in service or within the one-year presumptive period following his discharge from service." *Odra Ledford,* BVA ___, at 3–4 (May 7, 1991). Appellant filed a timely Notice of Appeal on May 31, 1991. This Court has jurisdiction pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## II.

There are three facts which are amply supported by the record and not disputed by appellant or the Secretary: Appellant did not have impaired hearing prior to service or upon induction into service; he had impaired hearing ("partial deafness rt. ear") upon separation from service; and he presently has a hearing deficit to a degree which would be compensable if service connected. Nevertheless, in its decision of May 7, 1991, the Board denied appellant's claim for service connection and specifically found as the single "FINDING OF FACT" that: "Defective hearing *as defined by the VA* was *not* objectively demonstrated in service or until more than one year after his discharge from service." *Ledford,* BVA ___, at 4 (emphasis added). From a review of the record, it appears that the denial of service connection at all adjudication levels was based upon this same premise. *See* rating of March 2, 1990 ("not diagnostic of defective hearing for VA pur-

poses"), R. at 55; Statement of the Case dated May 24, 1990, R. at 82.

In its decision of May 7, 1991, the Board made specific reference to 38 C.F.R. § 3.385 (1991), which had been promulgated one year earlier, and listed the regulation as supporting its conclusion. *Ledford,* BVA No. ____, at 4. The cited regulation, § 3.385, is entitled "[d]etermination of service connection for impaired hearing" and provides as follows:

> Service connection for impaired hearing shall not be established when hearing status meets pure tone and speech recognition criteria. Hearing status shall not be considered service-connected when the thresholds for the frequencies of 500, 1000, 2000, 3000 and 4000 Hertz are all less than 40 decibels; the thresholds for at least three of these frequencies are 25 decibels or less; and speech recognition scores using the Maryland CNC Test are 94 percent or better.

The stated purpose of the regulation was "to establish criteria for the purpose of determining the levels at which hearing loss becomes disabling." 55 Fed.Reg. 12348–02 (1990). The stated effect of the regulation was to insure consistency by establishing a "department-wide rule for making determinations regarding service connection for impaired hearing." *Id.* In one sense, the regulation mixes apples and oranges in that it uses criteria for hearing loss to determine service connection and not degree of disability, but we need not here address that issue.

█ It is important to note that § 3.385 is negative in its terms and in its application. The regulation states when service connection will *not* be established; it does not, however, determine when service connection will be established. Therefore, by its terms, the regulation does not and cannot apply to the diagnosis rendered on appellant's separation physical examination because the examination is incomplete and there is no indication whether or not appellant's hearing met the thresholds for the cited frequencies; the regulation does not in and of itself rule out an award of service connection due to the absence of results of an in-service audiometric examination capable of being compared with the regulatory pure tone and speech recognition criteria. If the regulation were construed to require retroactively such in-service examination results before service connection for hearing loss could be found, serious questions would arise. However, when applied—as it properly must be—to the current audiometric reports, § 3.385 compels the indisputable conclusion that appellant now suffers from defective hearing as defined by the VA. Therefore, the provisions of 38 C.F.R. § 3.385 do not serve as a bar to service connection.

█ As its "REASONS AND BASES FOR DECISION" the Board noted only the absence of complaints or treatment for ear problems or hearing loss during service and the lack of audiometric findings which would support the diagnosis on the separation physical examination that there was partial loss of hearing in the right ear. We have dealt with the absence of audiometric findings above. Contrary to the implicit reasoning of the BVA, we are unable to find in the statutes or regulations a requirement that there must be complaints or treatment in service before service connection can be found. The separation physical examination is more than sufficient evidence that appellant's hearing was impaired during service. In the face of such evidence, there is simply no basis to deny service connection on the ground that the veteran was not treated for this impairment while in service. For the BVA to have done so, in the absence of statutory or regulatory authority, was error. Similarly, we hold that the absence of a complaint of hearing loss during a heart examination is not, on this record, a plausible basis for denying service connection.

### III.

The BVA, in its decisions, is statutorily required to provide a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions." 38 U.S.C. § 7104(d) (formerly § 4004(d)). *See, e.g., Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). A remand is

required where the BVA fails to provide an adequate statement of the "reasons or bases" for its findings and conclusions, with respect to both the merits and the application of the "benefit of the doubt" under 38 U.S.C. § 5107(b) (formerly § 3007(b)). *See Gilbert; Willis v. Derwinski,* 1 Vet.App. 63, 65–66 (1990).

The reasons and bases provided by the Board for denying service connection are inadequate as a matter of law. Moreover, the BVA failed to provide "reasons or bases" for its implicit conclusion that the veteran is not entitled to the "benefit of the doubt" under 38 U.S.C. § 5107(b). Accordingly, the May 7, 1991, BVA decision is VACATED and the matter is REMANDED for proceedings consistent with this opinion. "A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991).

*It is so Ordered.*