Citation Nr: 1331572 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 07-30 391 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Winston-Salem, North Carolina



THE ISSUE

Entitlement to service connection for bilateral hearing loss.



REPRESENTATION

Appellant represented by: The American Legion



ATTORNEY FOR THE BOARD

J. Nichols, Associate Counsel




INTRODUCTION

The Veteran served on active duty from June 1954 to March 1957 and from April 1960 to December 1968. 

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from an April 2006 rating decision of the RO. 

The Board remanded the issue to the RO in September 2010, May 2012 and April 2013 for additional development of the record. There has been substantial compliance with the Board's remand directives and this case is ready for Board adjudication.

A review of the Virtual VA paperless claims processing system reveals documents that are either duplicative of the evidence of record or are not pertinent to the present appeal. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2012). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The Veteran is found to have presented credible lay assertions of having exposure to hazardous noise levels in connection with his duties during service and for the purpose of establishing the presence of hearing problems beginning in service.

2. In-service audiograms tend to show threshold shifts in hearing acuity that are consistent with the onset of a loss of hearing during his extended period of active service.

3. The currently demonstrated bilateral sensorineural hearing loss is shown as likely as not to have its clinical onset due to the Veteran's exposure to harmful noise levels while carrying out his duties during service.


CONCLUSION OF LAW

By extending the benefit of the doubt to the Veteran, his disability manifested by a bilateral sensorineural hearing loss is due to disease or injury that was incurred in active service. 38 U.S.C.A. §§ 1110, 1154, 5107 (West 2002); 38 C.F.R. §§3.102, 3.303, 3.385 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

To the extent that the action taken hereinbelow is favorable to the Veteran, a discussion of compliance with VA's duty to notify and assist is not required at this time.


Law & Analysis

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § § 1110, 1131 (West 2002); 38 C.F.R. § 3.303(a) (2012). 

To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). The absence of any one element will result in denial of service connection. Coburn v. Nicholson, 19 Vet. App. 427, 431 (2006).

Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. 

If chronicity in service is not established for a chronic disease as enumerated for VA compensation purposes, to include an organic disease of the nervous system (such as sensorineural hearing loss), a showing of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. §§ 3.303(b) , 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

In addition, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including sensorineural hearing loss, are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

The threshold for normal hearing is from 0 to 20 decibels; higher thresholds show some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). Impaired hearing is considered a disability for VA purposes when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz (Hz) is 40 decibels (dB) or greater or where the auditory thresholds for at least three of these frequencies are 26 dB or greater or when speech recognition scores are less than 94 percent. 38 C.F.R. § 3.385.

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. VA shall consider all information and lay and medical evidence of record in a case and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A.§ 5107; 38 C.F.R. § 3.102 ; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the weight of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

The Veteran contends that his current bilateral sensorineural hearing loss is due to exposure to harmful noise levels incident to his duties during service. Specifically, in a November 2006 statement, he reports having continuous exposure to loud noise as a machine repairman in the Air Force (without the benefit of any hearing protection). 

The Veteran explains that, during his tours of duty, to include in the Republic of Vietnam, his duty station was near the runway where he was exposed to loud noises from airplanes, gunfire and diesel engines used to supply electricity. He also was exposed to these loud noises for prolonged periods of time and worked and slept in these loud conditions. He avers that, since service, his hearing has been worsening each year.

A review of the Veteran's service personnel records shows that his military occupation specialties included that as a machine repairman. The Veteran submitted statements as to his noise exposure during the course of carrying out his in-service duties. As the claimed noise exposure is consistent with the duties involved in his occupation, in-service noise exposure is acknowledged. 38 U.S.C.A. § 1154(a).

The service treatment records from both periods of active duty service showed that the Veteran did not manifest complaints of hearing problems. 

However, the in-service audiograms documented a notable change in his hearing threshold levels which signified a downward shift in hearing acuity from the time of entrance to separation. 

The Court of Appeals for Veterans Claims (Court) has held that "the threshold for normal hearing is from 0 to 20 dB [decibels], and higher threshold levels indicate some degree of hearing loss." See Hensley v. Brown, 5 Vet. App. 155 (1993). Thus, when comparing the in-service audiograms, hearing loss is demonstrated in service as per Hensley. 

A June 1954 enlistment examination, June 1956 reenlistment examination, January 1957 examination, and May 1958 examination (all from initial period of active duty service) showed that "15/15" was recorded for the whispered voice test. 

The second period of active duty service contains audiograms revealing the downward shift in hearing acuity from the time of entrance in 1960 to 1967/1968. 

A January 1960 temporary disability retirement list (TDRL) examination audiogram reveals puretone thresholds, in decibels, as follows (appears to have reported ISO-ANSI data; see note below):


Hertz

250
500
1000
2000
3000
4000
6000
8000
R
15
15
10
20
--
20
--
15
L
15
5
10
10
--
20
--
20

[NOTE: Prior to November 1967, audiometric test results were reported in standards set forth by the American Standards Association (ASA). Since November 1, 1967, standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). In order to facilitate data comparison, the ASA standards must be converted to ISO-ANSI standards. 

For purposes of comparison between the service audiometric data and more recent VA audiometric data, the tables below show the ASA measurements recorded in service, with the comparable ISO (ANSI) measurements in adjacent parentheses.]

Both of the April 1967 and July 1968 in-service audiograms reveal the following puretone thresholds, in decibels, as follows:


Hertz

250
500
1000
2000
3000
4000
6000
8000
R

0 (15)
0 (10)
5 (15)
5 (15)
10 (15)
20 (30)

L

0 (15)
-5 (5)
5 (15)
0 (10)
15 (20)
15 (25)



The October 1968 Medical Board examination (which led to the Veteran's separation due to other reasons) reveals the following puretone thresholds, in decibels, as follows:


Hertz

250
500
1000
2000
3000
4000
6000
8000
R

0 (15)
0 (10)
0 (10)
5 (15)
10 (15)
15 (25)

L

0 (15)
0 (10)
0 (10)
10 (20)
10 (15)
15 (25)


Shortly after service, the Veteran underwent a TDRL examination in March 1970, approximately 15 months after separation from service. Audiogram findings reveal, in puretone thresholds, in decibels, the following:


Hertz

250
500
1000
2000
3000
4000
6000
8000
R

10 (25)
5 (15)
0 (10)
0 (10)
0 (5)
20 (30)

L

0 (15)
0 (10)
0 (10)
5 (15)
20 (25)
20 (30)


When comparing the results of the January 1960, a couple months prior to beginning active service, and the April 1967/July 1968 audiograms, conducted approximately seven or eight years later, there is a five decibel threshold increase in the left ear at the 500 and 2000 Hertz categories. 

The Board also notes some improvement in other categories, but the important thing of note here are the results recorded in the 6000 Hertz category for the 1967/1968 audiograms - 30 decibels (ISO-ANSI, right ear) and 25 decibels (ISO-ANSI, left ear). 

Such results are indicative of hearing loss as per Hensley. Thus, it cannot be said that the Veteran's hearing was "normal" during service as these results exceed the threshold for "normal hearing." See Hensley v. Brown, 5 Vet. App. 155 (1993). 

Moreover, it is clear that there is a worsening of the hearing loss when evaluating the results from the March 1970 audiogram, conducted approximately 15 months after service concluded.

The Board notes that, in Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992), the Court held that hearing loss disability by the standards of 38 C.F.R. § 3.385 is not required during service, only currently. In fact, the law and regulations do not specifically require complaints of, or treatment for, hearing loss during service in order to establish service connection. Id. 

Now, as a loss of hearing and noise exposure were identified in service, the Board now turns to the evidence linking the in-service shift in hearing acuity and noise exposure to the Veteran's current bilateral hearing loss disability. The Veteran may establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service. See Hensley v. Brown, 5 Vet. App. 155, 157 (1993); 38 C.F.R. § 3.303. 

The record shows that the Veteran first sought treatment for hearing loss post-service in 2002. The Veteran filed his claim for service connection for bilateral hearing loss in 2005.

The Board also notes that a lay person is competent to identify a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

As a general matter, lay witnesses are competent to testify as to their observations as well as opine on questions of diagnosis and etiology in some circumstances. See Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (lay witnesses are competent to testify as to their observations, but this testimony must be weighed against the other evidence of record); see also Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (Board's categorical statement that "a valid medical opinion" was required to establish nexus, and that a layperson was "not competent" to provide testimony as to nexus because she was a layperson, conflicts with Jandreau; lay witnesses may, in some circumstances, opine on questions of diagnosis and etiology).

The Veteran is competent to describe symptoms of an injury or illness, such as loss of hearing, and once such evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465, 469 (1994) (distinguishing between competency and credibility, which is a "factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). 

As stated, it is within the scope of the Veteran's competency for him to describe diminishing hearing capacity during service and thereafter. The Board finds the Veteran's assertion of hearing loss beginning in service to be credible. 

The Board also does not dispute that the Veteran had exposure to hazardous noise levels in service. The Veteran's descriptions of noise exposure are consistent with his military occupational specialty of Air Force machine repairman. 

Furthermore, as per Jandreau/Davidson, the Board acknowledges that the Veteran is competent to state that his current hearing loss disability is related to his in-service hearing loss or noise exposure. This is because the Veteran's assertion is supported in the record by a July 2006 post-service VA treatment note (a follow-up for hearing/tinnitus issues). 

The treatment note reveals that the examining physician diagnosed the Veteran with sensorineural hearing loss (bilateral) and indicated that the hearing loss had been stable since 2002. 

There was an indication of a positive nexus in the treatment record as the physician recorded that the Veteran has positive noise exposure in Vietnam and hearing loss was secondary to noise exposure and age. 

There are two other medical nexus opinions of record. The Veteran was afforded a VA examination January 2011 where the examiner noted that there was no hearing loss or change in hearing shown during his periods of service and reported that the decreased hearing from 2002 to 2011 was essentially due to the aging process. 

The Board remanded for further development because no opinion was offered as to whether the hearing loss that was first noted in 2002 was related to the Veteran's service. 

The Veteran underwent another VA examination in June 2012 when the VA examiner noted a diagnosis of sensorineural hearing loss in the 6000 or higher frequencies for both ears. In opining that the Veteran's current hearing loss was not at least as likely as not caused by or a result of service, the examiner explained that hearing evaluations in service revealed normal hearing in both ears and that there was no decline in hearing during service. 

Furthermore, the examiner noted that the Veteran's noise exposure in service was not likely to have had enough cumulative impact on his hearing. She opined that the Veteran's hearing had likely declined due to the normal aging process or other medical factors. 

The Board assigns limited probative value to the June 2012 examiner's opinion because the record clearly reflects a loss of hearing when comparing the in-service audiograms and this fact was not fully addressed by the examiner. 

Considering the totality of the evidence, including the Veteran's credible assertions of diminished hearing since service, a VA treatment record indicating a positive nexus, and a VA negative nexus opinion the Board finds the evidence to be in relative equipoise in showing that his current hearing loss as likely as not is due to a pattern of exposure hazardous noise levels that began during service. 

In resolving reasonable doubt in the Veteran's favor, service connection is warranted. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

Service connection for bilateral hearing loss is granted.



____________________________________________
STEPHEN L. WILKINS 
Veterans Law Judge, 
Board of Veterans' Appeals



Department of Veterans Affairs