﻿Citation Nr: 18132483
Decision Date: 09/06/18 Archive Date: 09/06/18

DOCKET NO. 14-29 157A
DATE: September 6, 2018
ORDER
New and material evidence having been received, the claim of service connection for a disability of the bilateral ankles is reopened. 
New and material evidence having been received, the claim of service connection for a headache disability is reopened. 
New and material evidence having been received, the claim of service connection for a disability of the back is reopened. 
Entitlement to service connection for tinnitus is granted.
Entitlement to service connection for bilateral foot fungus is denied.
REMANDED
The reopened claim of service connection for a disability of the bilateral ankles is remanded.
The reopened claim of service connection for a headache disability is remanded.
The reopened claim of service connection for a back disability is remanded.

Entitlement to service connection for a cervical spine disability is remanded.
Entitlement to service connection for bilateral hearing loss is remanded.
FINDINGS OF FACT
1. In an unappealed June 2010 rating decision, the RO denied the claim of service connection for a bilateral ankle disability; a headache disability and a back disability.
2. Evidence received since the final June 2010 rating decision relates to an unestablished fact necessary to substantiate the claim of service connection for a bilateral ankle disability.
3. Evidence received since the final June 2010 rating decision relates to an unestablished fact necessary to substantiate the claim of service connection for a headache disability.
4. Evidence received since the final June 2010 rating decision relates to an unestablished fact necessary to substantiate the claim for service connection for a back disability. 
5. The Veteran’s tinnitus is found to have begun during active service.
6. The preponderance of the evidence is against finding that bilateral foot fungus began during active service, or is otherwise related to an in-service injury, event, or disease.
CONCLUSIONS OF LAW
1. The June 2010 rating decision that denied the claims of service connection for bilateral ankle disability; a headache disability and a back disability became final. 38 U.S.C. 7105 (2014); 38 C.F.R. 20.1103 (2018).
2. New and material evidence has been received to reopen the claims of service connection for bilateral ankle disability; a headache disability and a back disability. 38 U.S.C. 5108 (2014); 38 C.F.R. 3.156 (2018).
3. The criteria for service connection for tinnitus are met. 38 U.S.C. §§1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).
4. The criteria for service connection for bilateral foot fungus have not been met. 38 U.S.C. §§1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from October 1987 to October 1990 and had additional reserve service. This matter comes before the Board from an August 2013 rating decision.
New and Material Evidence 
The Veteran was initially denied service connection for disability of the bilateral ankles, a headache disorder, and a back disability in a June 2010 rating decision. The Veteran was notified of the rating decision, but did not appeal the decision and no new and material evidence received within one year of the issuance of those rating decision. As such, the June 2010 rating decision became final. 38 U.S.C. 7105; 38 C.F.R. 20.1103.
A claim will be reopened in the event that new and material evidence is presented. 38 U.S.C. 5108. Because the June 2010 rating decision was the last final disallowance, the Board must review all of the evidence submitted since this rating decision to determine whether the Veteran’s claim for service connection should be reopened and re-adjudicated on a de novo basis. Evans v. Brown, 9 Vet. App. 273 (1996). If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Board shall reopen the claim and review the former disposition of the claim. 38 U.S.C. 5108. 
With regard to petitions to reopen previously and finally disallowed claims, the Board must conduct a two-part analysis. First, the Board must determine whether the evidence presented or secured since the prior final disallowance of the claim is “new and material.” Second, if the Board determines that the evidence is “new and material,” it must reopen the claim and evaluate the merits of the claim in view of all the evidence, both new and old. Manio v. Derwinski, 1 Vet. App. 140, 145 (1991). 
Section 3.156(a) provides as follows: A claimant may reopen a finally adjudicated claim by submitting new and material evidence. New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. 3.156 (a) (2017). 
The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is “low.” See Shade v. Shinseki, 24 Vet. App. 110, 117 (2010). Furthermore, in determining whether this low threshold is met, VA should not limit its consideration to whether the newly submitted evidence relates specifically to the reason why the claim was last denied, but instead should ask whether the evidence could reasonably substantiate the claim were the claim to be reopened, either by triggering the VA Secretary’s duty to assist or through consideration of an alternative theory of entitlement. Id at 118. 
In determining whether evidence is new and material, the “credibility of the evidence is to be presumed.” Justus v. Principi, 3 Vet. App. 510, 513 (1992).

1. Bilateral ankles
Service connection was previously denied by the RO in a June 2010 rating decision, which found that although service treatment records (STRs) showed that the Veteran had sustained a right ankle injury playing basketball, the X rays were normal and his separation examination was normal. The rating stated that although complaints of ankle pain were shown post service, there was no diagnosis of an ankle disorder linked to an in-service event. Evidence before the RO in June 2010 included STRS showing treatment for a right ankle sprain in March 1989 after playing basketball. The October 1990 separation examination showed normal lower extremities but the accompanying report of medical history revealed an endorsement of ankle pain; he did not clarify which ankle was involved. See 103 pg. records containing mix of STRs and other records received 2/10/10 at pg. 34-38, 48, 97.
Evidence received after June 2010 includes the Veteran’s July 2017 hearing testimony, which described him as having a current bilateral ankle disability, and he suggested that one ankle may be compensating for the other and affecting it. His in-service ankle injury was noted and he stated that he believed he injured both ankles in the accident. Transcript at pg. 11-13. This testimony describing ongoing ankle symptoms The Board finds that this testimony is new, as such evidence was not of record prior to the issuance of the June 2010 rating decision. Moreover, this evidence is material as it raises the possibility of continuity of symptoms of ankle disability bilaterally, particularly in light of the right ankle sprain treated in service and his history of unspecified ankle pain reported on the separation examination report of medical history. Accordingly, the Board finds that the newly added evidence relates to an unestablished fact necessary to substantiate the Veteran’s claim of service connection for a disability of the bilateral ankles. 38 C.F.R. 3.156 (a). As such, the Veteran’s claim is reopened.
2. Headaches
Service connection was previously denied for a headache disorder in a June 2010 rating decision which found that the STRs showed no complaints, diagnosis or treatment of a chronic or migraine headache disorder. It was noted that although the Veteran may have had headaches during service, no permanent residual or chronic disability subject to service connection was shown by the STRs or evidence following service. The evidence before the RO in June 2010 included STRs, which noted headache listed among symptoms associated with a diagnosis of gastroenteritis. See 103 pg. records containing mix of STRs and other records received 2/10/10 at pg. 97. Otherwise, the STRs including the entrance and separation examinations and report of medical history were negative for a chronic headache disorder or head injury. 
Evidence obtained after June 2010 included records from November 2012 showing treatment for neck pain with a diagnosis of cervical spondylosis with associated diagnoses of cervical neuralgia and cervicogenic headaches. See 18 pg. records received 6/20/13 at pg. 10. A November 2014 physical therapy note for his cervical spine issues also noted headaches with a treatment goal to have no more than 5 headaches a week. See 33 pg. medical records received 8/13/15 at pg. 1. Also received after June 2010 was the Veteran’s July 2017 hearing testimony describing an incident aboard ship where he slipped and fell off a ladder striking his head and neck. He said that headaches started a few months after this incident but he sought no treatment. He said he was examined by a doctor to determine the cause of his headaches and this doctor suggested they were linked to his neck problems. 
The Board finds that this evidence is new, as such evidence was not of record prior to the issuance of the June 2010 rating decision. Moreover, this evidence is material as it relates to the unestablished element of a nexus between the Veteran’s claimed disorder and service. Specifically, it tends to show that the Veteran’s headaches began after a head injury from a fall of a ladder aboard ship, or alternately, may be related to a neck injury for which he is claiming service connection. Accordingly, the Board finds that the newly added evidence relates to an unestablished fact necessary to substantiate the Veteran’s claim of service connection for a headache disorder. 38 C.F.R. 3.156 (a). As such, the Veteran’s claim is reopened.
3. Back 
Service connection for a back disorder was denied by a June 2010 rating, which noted that STRs showed no complaints, treatment or diagnosis of a back disorder. The denial noted a February 2010 favorable opinion from a Dr. V. stating that arthritis in his back was likely caused by heavy lifting, excessive bending and climbing in service, but found this of little probative value because the earliest treatment for his back was in 2009 or 2010. In addition to this opinion, evidence before the RO included STRs that were negative for any back issues, except that the October 1990 report of medical history on separation showed that he answered “yes” to having recurrent back pain. See 103 pg. records containing mix of STRs and other records received 2/10/10 at pg. 37-38. Post-service a January 2010 lumbar X-ray was negative. Id. At pg. 9. 
Evidence received after the June 2010 rating includes evidence of degenerative changes of the lumbar spine shown as DDD in a January 2013 letter from a neurologist, with history of low back pain (and neck pain) over 18-20 years with history of a fall from a ladder at work. See 18 pg. recs received 6/20/13 at pg. 1. Lay statements received in April 2014 from family members, including his son and daughter confirmed he had long standing back pain and a statement from his mother described him as not having back trouble before service but being active in sports and she recalled that he told her he fell at sea. She noted that he wouldn’t allow anyone to treat his neck and back injuries and back injuries and self-treated with over the counter medications following service. Additionally, his hearing testimony of July 2017 detailed the injury aboard ship where he fell and landed on his back and neck but he didn’t seek treatment. Transcript pg. 8-10. 
The Board finds that this evidence is new, as such evidence was not of record prior to the issuance of the June 2010 rating decision. Moreover, this evidence is material as it relates to the unestablished element of a nexus between the Veteran’s claimed disorder and service. Specifically, it demonstrates some evidence of a current back disability from a fall of a ladder aboard ship. Accordingly, the Board finds that the newly added evidence relates to an unestablished fact necessary to substantiate the Veteran’s claim of service connection for a back disorder. 38 C.F.R. 3.156 (a). As such, the Veteran’s claim is reopened.
Service Connection
1. Tinnitus
The Veteran contends that he has tinnitus as the result of acoustic exposure in service. The RO, in its August 2013 rating decision, determined that the Veteran was not exposed to acoustic trauma when it denied his hearing loss claim. However, he is shown to have served aboard a flight deck per a December 15, 1989 Hearing Conservation Data record and noise exposure is thus consistent with the circumstances of his service. See 103 pg. records containing mix of STRs and other records received 2/10/10 at pg. 50. His hearing testimony described that he worked on a flight deck with helicopters where he wore hearing protection he described as “mediocre” and he noticed his ears rung after the headgear was removed but he thought it would go away. He testified that it never fully went away. He indicated that he now must sleep with something that blocks the sound. Transcript pg. 2-6.
Post service records show that he underwent a private audiological examination in March 2014, which diagnosed sensorineural hearing loss and complaints of tinnitus. See 15 pg. recs entered 4/4/14 at pg. 9. 
The Board concludes that the Veteran has a current diagnosis of tinnitus that as likely as not began in service and is related to in-service acoustic trauma. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).
In making all determinations, the Board must fully consider the lay assertions of record. If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). A lay person is particularly competent to testify to in-service acoustic trauma, in-service symptoms of tinnitus, and post-service continuous symptoms of tinnitus “because ringing in the ears is capable of lay observation.” See Charles v. Principi, 16 Vet. App 370, 374-75 (2002); see also Horowitz v. Brown, 5 Vet. App. 217, 221-22 (1993) (noting tinnitus as a symptom of Meniere’s disease).
The balance of the lay and medical evidence reflects tinnitus to be a subjective symptom that began shortly in service where he sustained acoustic trauma per the Veteran’s competent and credible reported history. The Veteran is competent to describe symptoms observable to his senses; as such, he is also competent to diagnose tinnitus. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Charles v. Principi, 16 Vet. App. 370, 374 (2003). As noted above, the Board finds the lay evidence to be credible as to the onset of tinnitus around the end of service and continuing thereafter, because his statements have been detailed and consistent.
The Board therefore finds that the Veteran has tinnitus, and that competent and probative lay evidence indicates that it as likely as not began on or around the time of the established in-service exposure to acoustic trauma and continued thereafter. With this in mind, entitlement to service connection for tinnitus is warranted. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.
2. Bilateral Foot Fungus
The Veteran contends that service connection is warranted for a bilateral foot fungus. 
The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.
STRs are negative for foot troubles or a skin condition, including on the June 1987 entrance examination and October 1990 separation examination and their respective reports of medical history. No significant findings of foot problems were noted on the records treating his sprained ankle. See 103 pg. records containing mix of STRs and other records received 2/10/10 at pg. 38-42, 34-35, 97. 
Post service records show that the Veteran was treated for foot pain in January 2010, with no diagnosis made. Id. At pg. 28. In December 2012 he was seen for complaints of a painful, thick dystrophic nail of the right first toe and he was diagnosed with onychomycosis—painful onychia without cellulitis. No opinion as to causation was given and no other records are shown to provide any opinion as to causation. 
The Veteran testified at his January 2017 hearing that his fungus started in service as a “black toe” that continued to be black and painful and was self-treated by cutting it and taking pain medication. He attributed this fungus to wearing steel toed boots on the flight deck which made his feet sweat and he also smashed it to where the boot was bent. 
The Board concludes that, while the Veteran has a diagnosis of onychomycosis of the right first toe, the preponderance of the evidence is against finding that it began during active service, or is otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d).
As noted above, service treatment records are silent for foot problems and post-service treatment records show the Veteran was not diagnosed with a foot fungus until 2012, which is over a decade after his separation from service. While he is competent to report having experienced symptoms of foot problems and reportedly injured his foot in service, he is not competent to provide a diagnosis in this case or determine that the onychomycosis of the right great toe resulted from service. The Board finds this issue to be medically complex, as it requires knowledge of podiatry and possibly dermatology, as he is essentially claiming service connection for a fungal condition affecting the foot. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). As such, the Board finds the Veteran lacks competence in these areas and his statements on these points carry no weight. 
While the Veteran believes his claimed foot fungus is related to service the Board reiterates that the preponderance of the evidence weighs against findings that an in-service injury, event, or disease resulting in such a disorder occurred.
REASONS FOR REMAND
1. Service connection for bilateral ankle disability is remanded.
The Board has reopened the claim of service connection for a bilateral ankle disorder. The Veteran has not been afforded a VA examination regarding the etiology of the claimed disorder. Notably, the Veteran was treated for a right ankle sprain in service in March 1989 as noted in the above decision reopening this claim and in the October 1990 Report of Medical History, the Veteran specifically wrote in and checked “YES” as to having ankle problems. He did not specify which ankle had problems. 
Although post-service records do not clearly diagnose an ankle disability, he has provided testimony as to having an ankle disability and further appears to suggest that there may be aggravation of one ankle on the other due to compensating, although this was unclear. As such, the Board finds that a medical opinion is required to assist in determining whether it is at least as likely as not that the Veteran has a current disability of either ankle that was incurred in service and if only one ankle is deemed directly related to service, whether there is aggravation of the non-service connected ankle by the service-connected one.

2. Entitlement to service connection for a headache disability is remanded.
The Board has reopened the claim of service connection for a headache disorder. The Veteran has not been afforded a VA examination regarding the etiology of the claimed disorder. Notably he has provided lay evidence of an accidental fall from a ladder in service where he described striking his head and developing headaches months afterwards. He also has indicated that the headaches are related to his cervical spine disorder for which he is also claiming entitlement to service connection. It is noted that some of the medical evidence as reported in the decision reopening this claim suggests that the headaches are related to his cervical spine disorder. As such, the Board finds that a medical opinion is required to assist in determining whether it is at least as likely as not that the Veteran has a current headache disability that was incurred in service or, alternately, whether it is being caused or aggravated by his cervical spine disorder. 

3. Entitlement to service connection for a back disability is remanded.
The Board has reopened the claim of service connection for a back disorder. The Veteran has not been afforded a VA examination regarding the etiology of the claimed disorder. Notably he has provided lay evidence of an accidental fall from a ladder in service where he described landing on his back. He also has checked “yes” to having back pain on his October1990 separation examination. As such, the Board finds that a medical opinion is required to assist in determining whether it is at least as likely as not that the Veteran has a current back disability that was incurred in service. 
4. Entitlement to service connection for a cervical spine disability is remanded.
The Veteran has claimed service connection for a cervical spine disability to include as secondary to the claimed back disability. He has not been afforded a VA examination regarding the etiology of the claimed disorder. Notably, he has provided lay evidence of an accidental fall from a ladder in service where he described striking his neck. He also has indicated that the cervical spine disability is related to his back disorder for which he is also claiming entitlement to service connection. As such, the Board finds that a medical opinion is required to assist in determining whether it is at least as likely as not that the Veteran has a current cervical spine disability that was incurred in service or alternately whether it is being caused or aggravated by his lumbar spine disorder. 
Service connection for bilateral hearing loss is remanded.
The Veteran asserts that his bilateral hearing loss is the result of noise exposure during military service. In-service noise exposure has been conceded by VA and he has been granted service connected for tinnitus as due to such exposure in the instant Board decision. 
The Board finds that remand of this matter is necessary to afford proper development of this matter. The RO’s denial of service connection was based in part on its finding that the Veteran had no exposure to acoustic trauma, contrary to the evidence showing such trauma from working on a flight line shown in the STRs. Additionally, the RO found no evidence of a current hearing loss, post service records show that he underwent a private audiological examination in March 2014, which diagnosed sensorineural hearing loss. See 15 pg. recs entered 4/4/14 at pg. 9. 
The thresholds for normal hearing are between 0 and 20 decibels, and higher thresholds show some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 159 (1993). For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater, or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, 4000 Hertz are 26 decibels or greater, or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.
As the Veteran has yet to be provided with a VA examination to address whether the Veteran has a hearing loss related to his inservice acoustic trauma, one should be obtained. 
The matters are REMANDED for the following action:
1. Schedule the Veteran for an examination(s) by an appropriate clinician to determine the nature and etiology of any disabilities of the left ankle, right ankle, cervical spine, lumbar spine, and headache disorders. The examiner must opine whether any disability/disabilities of the left ankle, right ankle, cervical spine, lumbar spine and headaches is/are at least as likely as not related to an in-service injury, event, or disease, including the claimed fall from the ladder said to have happened in service (for the disabilities of the cervical spine, lumbar spine and headaches) or the basketball injury of the right ankle (for the claimed ankle disorders). Otherwise, the examiner should opine whether any arthritis of the left ankle, right ankle, cervical spine and/or lumbar spine and/or headache disorder was manifested within the first post service year.
If the lumbar spine disability is determined to be service connected but the cervical spine disability is not, the examiner should also address whether a cervical spine disability is at least as likely as not (1) proximately due to his claimed lumbar spine disability or (2) aggravated beyond its natural progression by service-connected lumbar disability.
Likewise, if a disability of one ankle but not the other is determined to be service connected, the examiner should address whether the non-service connected ankle is at least as likely as not (1) proximately due to his service connected ankle disability or (2) aggravated beyond its natural progression by service-connected ankle disability.
Finally, if a cervical spine disability is determined to be service connected but the headache disability is not, the examiner should also address whether a headache disability is at least as likely as not (1) proximately due to his claimed cervical spine disability or (2) aggravated beyond its natural progression by service-connected cervical disability.
Any opinion offered should include a comprehensive rationale based on sound medical principles and relevant facts of this case. 
2. Schedule the Veteran for an audiological examination with an audiologist to assess the nature and etiology of his claimed bilateral hearing loss. Any medically indicated special tests should be accomplished, and all special test and clinical findings should be clearly reported. Upon examination of the Veteran and review of the entire claims folder, to include the service treatment records, post-service treatment records, and lay statements of the Veteran, the examiner should offer an opinion as to the following: 
Whether the Veteran has a current disability of hearing loss and if so it is at least as likely as not (at least a 50 percent probability) that any current disability of hearing loss was incurred or aggravated in service or was manifested within the first post-service year. 
In rendering the above opinion, the examiner is advised that the mere absence of in-service evidence of a hearing loss disability during service is not fatal to a service connection claim. See Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Evidence of a current hearing loss disability and a medically sound basis for attributing that disability to service may serve as a basis for a grant of service connection for hearing loss where there is credible evidence of acoustic trauma due to significant noise exposure in service, post-service audiometric findings meeting the regulatory requirements for hearing loss disability for VA purposes, and a medically sound basis upon which to attribute the post-service findings to the injury in service. Any opinion offered should include a comprehensive rationale based on sound medical principles and relevant facts of this case. 

 
Eric S. Leboff
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD C. Eckart, Counsel