﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/21 Archive Date: 04/30/21

DOCKET NO. 201022-114545
DATE: April 30, 2021

ORDER

Entitlement to a compensable rating for service-connected pleural calcifications with interstitial changes consistent with asbestosis is denied.

REMANDED

Entitlement to service connection for benign prostatic hyperplasia (BPH) is remanded.

Entitlement to service connection for bilateral hearing loss is remanded.

Entitlement to service connection for tinnitus is remanded.

Entitlement to service connection for hypertension is remanded.

FINDING OF FACT

The Veteran’s service-connected pleural calcifications with interstitial changes consistent with asbestosis has, for the entire period covered by this claim, been manifested by a Forced Vital Capacity (FVC) of no worse than 97 percent predicted; and, Diffusion Capacity of the Lung to Carbon Monoxide by the Single Breath Method (DLCO (SB)) has been no worse than 95 percent predicted.

CONCLUSION OF LAW

The criteria for a compensable rating for pleural calcifications with interstitial changes consistent with asbestosis have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.97, Diagnostic Code 6833.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had active service from August 1965 to June 1969.

These matters come before the Board of Veterans’ Appeals (Board) from an October 2020 supplemental claim decision issued by the Department of Veterans Affairs (VA) Regional Office (RO).

In the October 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the October 2020 supplemental claim decision. In that decision, the RO found that new and relevant evidence had been received to reconsider the claims for service connection. The Board is bound by the favorable findings and must reconsider the service connection claims on the merits.

1. Entitlement to a compensable rating for service-connected pleural calcifications with interstitial changes consistent with asbestosis is denied.

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. Part IV. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3.

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and above all, coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether they were raised by the Veteran, as well as the entire history of the veteran’s disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as “staging the ratings.” See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2008).

In this matter, the Veteran seeks a compensable rating for his service-connected pleural calcifications with interstitial changes consistent with asbestosis, which is rated under 38 C.F.R. § 4.97, Diagnostic Code 6833. Diagnostic Code 6833 is rated under the General Rating Formula for Interstitial Lung Disease (General Formula). Under the General Formula, a 10 percent disability rating is warranted for FVC of 75 to 80 percent predicted, or DLCO (SB) of 66 to 80 percent predicted. A 30 percent disability rating is warranted for FVC of 65 to 74 percent predicted, or DLCO (SB) of 56 to 65 percent predicted. A 60 percent disability rating is warranted for FVC of 50 to 64 percent predicted, or DLCO (SB) of 40 to 55 percent predicted, or maximum exercise capacity of 15 to 20 ml/kg/min oxygen consumption with cardiorespiratory limitation. A 100 percent disability rating is warranted for FVC of less than 50 percent predicted, or DLCO (SB) less than 40 percent predicted, or maximum exercise capacity less than 15 ml/kg/min oxygen consumption with cardiorespiratory limitation, or cor pulmonale or pulmonary hypertension, or requires outpatient oxygen therapy. 38 C.F.R. § 4.97, Diagnostic Code 6833.

Pursuant to 38 C.F.R. § 4.96(d) (titled “Special provisions regarding evaluation of respiratory conditions”), post-bronchodilator PFT results are to be used when “applying the evaluation criteria in the rating schedule unless the post-bronchodilator results were poorer than the pre-bronchodilator results. In those cases, use the pre-bronchodilator values for rating purposes.” See 38 C.F.R. § 4.96(d)(5).

In August 2019, the Veteran had a PFT test with his private provider, Dr. M.A. Post-bronchodilator results showed FVC at 97 percent and DLCO at 95 percent predicted. The Veteran reported having some dyspnea when walking on the golf course.

The Veteran had a VA examination in October 2019. The examiner noted that the Veteran required daily inhalational bronchodilator therapy. The examiner used the PFT test from August 2019, noting the FVC at 97 percent and DLCO (SB) at 95 percent predicted. The examiner stated that the disability did not impact the Veteran’s ability to work.

Based on the available evidence, the Veteran’s FVC has not been less than 97 percent predicted and his DLCO (SB) has not been less than 95 percent predicted. For a compensable rating, FVC must be at least between 75 to 80 percent predicted, or DLCO (SB) must be at least between 66 to 80 percent predicted. 38 C.F.R. § 4.97, Diagnostic Code 6833. The Veteran’s testing does not meet these requirements. Further, VA treatment records indicate that the Veteran’s PFT was stable throughout 2019 and 2020 and that there was no need for further testing. Accordingly, the Board finds that a compensable rating is not warranted for the Veteran’s service-connected pleural calcifications with interstitial changes consistent with asbestosis. The appeal is denied.

REASONS FOR REMAND

1. Entitlement to service connection for BPH is remanded.

The Veteran seeks service connection for BPH, to include as secondary to his presumed exposure to herbicides. This issue is remanded to correct a duty to assist error that occurred prior to the October 2020 rating decision on appeal. Specifically, the Agency of Original Jurisdiction (AOJ) obtained a medical opinion in October 2019, prior to the October 2020 rating decision on appeal, which addressed the direct relationship between BPH and service. In February 2020, VA conceded the Veteran’s exposure to herbicides; however, an addendum opinion addressing whether the Veteran’s BPH was related to his herbicide exposure was not obtained. On remand, an addendum opinion must be obtained addressing whether there is a relationship between the Veteran’s herbicide exposure and development of BPH. The examiner is reminded that despite the presumptive regulations, a claimant may establish service connection based on exposure to Agent Orange with proof of actual direct causation. See Stefl v. Nicholson, 21 Vet. App. 120 (2007) (holding that the availability of presumptive service connection for some conditions based on exposure to Agent Orange does not preclude direct service connection for other conditions based on exposure to Agent Orange); Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). 

2. Entitlement to service connection for bilateral hearing loss is remanded.

3. Entitlement to service connection for tinnitus is remanded.

The Veteran seeks service connection for bilateral hearing loss and tinnitus. These issues are remanded to correct a duty to assist error that occurred prior to the October 2020 rating decision on appeal. Specifically, in his March 2020 supplemental claim, the Veteran indicated he had tinnitus as well as bilateral hearing loss due to working in the boiler room during service. During the October 2019 VA examination, the examiner found that the Veteran’s disabilities were not related to service because the disabilities were not documented during service. Unfortunately, the opinions are inadequate for rating purposes because examiner did not address whether the Veteran’s disabilities are related to the noise he experienced while working in the boiler room. Further, regarding hearing loss, the absence of hearing loss disability in service is not in and of itself fatal to a claim for service connection for a hearing loss disability. Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Service connection may be awarded when there is sufficient evidence to otherwise demonstrate a relationship between the Veterans service and his current disability. Hensley v. Brown, 5 Vet. App. 155, 159-60 (1993). On remand, opinions must be obtained addressing whether the Veteran’s bilateral hearing loss and tinnitus are related to his reported exposure to noise while working in the boiler room during service.

4. Entitlement to service connection for hypertension is remanded.

The Veteran seeks service connection for hypertension. This issue is remanded to correct a duty to assist error that occurred prior to the October 2020 rating decision on appeal. Specifically, the AOJ obtained a medical opinion in October 2019, prior to the October 2020 rating decision on appeal, which addressed the direct relationship between hypertension and service. After the October 2019 VA examination, VA conceded the Veteran’s exposure to herbicides; however, an addendum opinion was not obtained addressing the relationship between hypertension and herbicide exposure. The National Academy of Science (NAS) study, Veterans and Agent Orange: Update 11 (2018), found “sufficient evidence” of an association between hypertension and exposure to herbicide agents such as Agent Orange. This publication upgrades hypertension’s previous classification in the category of “limited or suggestive” evidence of an association, to the category of “sufficient” evidence of an association. According to the NAS, “[t]he sufficient category indicates that there is enough epidemiologic evidence to conclude that there is a positive association” between hypertension and herbicide exposure. On remand, an opinion must be obtained addressing whether the Veteran’s hypertension is related to his exposure to herbicides during service, to include consideration of the findings in the NAS study.

The matters are REMANDED for the following action:

1. Ask the October 2019 VA examiner, or another qualified clinician, to provide an addendum opinion addressing the etiology of the Veteran’s benign prostatic hyperplasia. The examiner must be provided access to the electronic claims file and indicate review of the file in the opinion report.

After reviewing the claims file, the examiner must opine whether it is at least as likely as not (50 percent or greater probability) that the Veteran’s BPH is due to his exposure to herbicides during service. 

The examiner is advised that service connection for a disease can be established on a direct basis as related to Agent Orange and that service connection is not precluded solely because the disease is not listed as a presumptive condition associated with herbicide exposure. Thus, the opinion and associated rationale must address the likelihood that this Veteran’s BPH is related to herbicide agent exposure given his individual medical history, family history, risk factors, etc. 

A complete, well-reasoned rationale must be provided for any opinion offered. If a requested opinion cannot be rendered without resorting to speculation, the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge, i.e., no one could respond given medical science and the known facts, or by a deficiency in the record or the examiner, i.e., additional facts are required, or the examiner does not have the needed knowledge or training.

2. Ask the October 2019 VA examiner, or another qualified clinician, to provide addendum opinions addressing the etiology of the Veteran’s bilateral hearing loss and tinnitus. The examiner must be provided access to the electronic claims file and indicate review of the file in the opinion report.

After reviewing the claims file, the examiner must opine whether it is at least as likely as not (50 percent probability or greater) that the Veteran’s bilateral hearing loss and tinnitus are related to an in-service injury, event, or disease, including reported in-service noise exposure.

In providing the opinion, the examiner is advised that the absence of in-service evidence of a hearing disability is not always fatal to a service connection claim. See Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Evidence of a current hearing loss disability and a medically sound basis for attributing that disability to service may serve as a basis for a grant of service connection for hearing loss where there is credible evidence of acoustic trauma due to significant noise exposure in service, post-service audiometric findings meeting the regulatory requirements for hearing loss disability for VA purposes, and a medically sound basis upon which to attribute the post-service findings to the injury in service. See Hensley v. Brown, 5 Vet. App. 155, 159 (1993).

The examiner is advised that the Veteran is competent to report his symptoms and history, such as his report of exposure to noise in the boiler room, and such reports must be considered in the rationale. If the examiner rejects the Veteran’s reports, the examiner must provide a reason for doing so. A complete rationale for the opinions must be provided. 

3. Obtain addendum opinions from the October 2019 examiner, or another qualified clinician, addressing the etiology of the Veteran’s hypertension. The examiner must be provided access to the electronic claims file and indicate review of the file in the opinion report. 

After reviewing the evidence, the examiner must provide the following opinions: 

(a) Is it at least as likely as not (50 percent or greater probability) that the Veteran’s hypertension is related to his exposure to herbicide agents during service? The clinician is requested to consider and discuss as necessary the National Academy of Science’s Agent Orange: Update 11 (2018), which upgrades hypertension from the category of “limited or suggestive” evidence of an association with herbicide exposure to the category of “sufficient” evidence. 

(b) Is it at least as likely as not (50 percent or greater probability) that the Veteran’s service-connected ischemic heart disease caused his hypertension? The examiner must indicate when each disability manifested and the evidence used to make such findings.

(c) Is it at least as likely as not (50 percent or greater probability) that the Veteran’s service-connected ischemic heart disease aggravated, or worsened, his hypertension? The examiner is advised that claims for service connection due to aggravation of a disability do not require a showing of a permanent worsening. See Ward v. Wilkie, 31 Vet. App. 233 (2019).

The examiner is advised that service connection for a disease can be established on a direct basis as related to Agent Orange and that service connection is not precluded solely because the disease is not listed as a presumptive condition associated with herbicide exposure. Thus, the opinion and associated rationale must address the likelihood that this Veteran’s hypertension is related to herbicide agent exposure given his individual medical history, family history, risk factors, etc. 

A complete, well-reasoned rationale must be provided for any opinion offered. If a requested opinion cannot be rendered without resorting to speculation, the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge, i.e., no one could respond given medical science and the known facts, or by a deficiency in the record or the examiner, i.e., additional facts are required, or the examiner does not have the needed knowledge or training.

 

 

K. Conner

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. G. Alderman, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.