﻿Citation Nr: 19172658
Decision Date: 09/19/19 Archive Date: 09/18/19

DOCKET NO. 19-13 389
DATE: September 19, 2019

ORDER

Entitlement to service connection for a heart disability, including congestive heart failure with coronary artery disease (CAD) and cardiomyopathy is denied.

REMANDED

Entitlement to service connection for bilateral pes planus (claimed as feet, fallen arches, swelling and toe nail fell off) is remanded.

Entitlement to service connection for a left knee disability is remanded.

Entitlement to service connection for a right knee disability is remanded.

FINDING OF FACT

A heart disability, including congestive heart failure with CAD and cardiomyopathy, was not present in service or for years thereafter, and is not etiologically related to service, and did not manifest within one year of the Veteran's discharge from active duty service.

CONCLUSION OF LAW

A heart disability, including congestive heart failure with CAD and cardiomyopathy, was not incurred or aggravated during active duty. 38 U.S.C. §§ 1110, 1112, 1113, 1137, 5107 (2012); 38 C.F.R. §§ 3.303, 3.309 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from June 1979 to June 1983.

Service Connection

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. §§ 1110; 38 C.F.R. § 3.303 (a).

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303.

Under 38 C.F.R. § 3.303 (b), an alternative method of establishing the second and third Shedden/Caluza elements is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. See Hickson, 12 Vet. App. at 253 (lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303 (b). The theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309 (a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

In relevant part, 38 U.S.C. § 1154 (a) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). The United States Court of Appeals for the Federal Circuit has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d at 1337 ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence").

"Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991). Once evidence is determined to be competent, the Board must then determine whether such evidence is also credible. See Layno, supra (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). 

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

Where a veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic disabilities, such as cardiovascular-renal disease, arteriosclerosis (including coronary artery disease), to a degree of at least 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309.

When a veteran is found not to be entitled to a regulatory presumption of service connection for a given disability, the claim must nevertheless be reviewed to determine whether service connection can be established on another basis. See Combee v. Brown, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of the matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § § 5107 (2012); 38 C.F.R. § 3.102 (2018); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. At 54.

Entitlement to service connection for a heart disability, including congestive heart failure with CAD and cardiomyopathy

The Veteran contends that his currently diagnosed congestive heart failure with CAD and cardiomyopathy is related to going to the gas chamber and all the “chemistry” he dealt with during military service. See November 2018 and May 2019 VA Form 9.

The Veteran was not diagnosed with a heart disability for many years after service, and there is no competent evidence to establish that his currently diagnosed heart disability is due to any event or incident of the Veteran's period of active duty.

Service treatment records do not show a diagnosis, treatment or complaints related to a heart disability during active duty or at discharge.

Post-service treatment records show that the Veteran was diagnosed with non-ischemic cardiomyopathy in October 2016, and non-ST elevated myocardial infarction in January 2018. See private treatment records from Baptist Hospital and Methodist Hospital. During a September 2018 VA examination, he was diagnosed with congestive heart failure with coronary artery disease and cardiomyopathy. The post-service treatment records do not indicate that the Veteran's heart disability is related to his active military service. In this regard, the September 2018 VA examiner opined that, as there was no evidence of a heart condition during active duty and documentation of heart issues did not surface until the end of 2010, he was unable to correlate the currently diagnosed heart disability to service. 

The Board notes that it is symptoms and not treatment that must be considered when rendering an opinion as to the etiology between a current condition and events in service. Additionally, service connection is possible for disabilities first identified after service, and the absence of documented treatment in service or thereafter is not fatal to a service connection claim. 38 C.F.R. § 3.303 (d) (2018); see also Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Furthermore, A medical opinion based solely on the absence of documentation in record is inadequate and a medical opinion is inadequate if it does not take into account the Veteran's reports of symptoms and history. Dalton v. Peake, 21 Vet. App. 23 (2007). However, the Board finds that while the Veteran claims that his current heart disability is the result of his traumatic experience of going to the gas chamber in service, he has not specifically reported that he experienced symptoms of heart problems in service that continued after his discharge. In other words, he has not specifically reported a continuity of symptomatology beginning in service. There is no other evidence, VA or private, which indicates that the Veteran's current heart disability is related to service.

With regard to the years-long evidentiary gap in this case between active service and the earliest manifestations of heart problems, the Board notes that this passage of time weighs significantly against a finding of direct service connection for a heart disability. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

The presumption of service connection for chronic diseases diagnosed within one year following discharge from active duty is also not applicable to this case because the evidence demonstrates that the Veteran’s CAD was initially shown more than one year after his from service.

The Board acknowledges the Veteran's assertion that he has a heart disability related to active military service. However, while the Veteran is competent to report the observable symptoms of a disability, and in certain situations a lay person may be competent to establish the etiology of a disability; in the present case, the Veteran is not competent to provide a nexus between his currently diagnosed heart disability and his active service. Such an opinion would require medical expertise as it would require clinical testing and interpretation of clinical findings as well as assessing the relevance of any noted symptomatology. Thus, the Board finds that the Veteran, as a layperson, is not qualified to render an opinion concerning the cause of his currently diagnosed heart disability. 38 C.F.R. § 3.159 (a)(1), (2) (2018).

For the reasons and basis stated above, the Board finds that service connection for a heart disability is not warranted. In reaching this decision, the Board has considered benefit-of-the-doubt doctrine; however, as the preponderance of the evidence is the against the claim, that doctrine is not applicable.

REASONS FOR REMAND

1. Entitlement to service connection for bilateral pes planus (claimed as feet, fallen arches, swelling and toe nail fell off) is remanded.

The Veteran contends that his currently diagnosed bilateral pes planus developed as a result of excessive standing and marching in service. See November 2018 notice of disagreement (NOD) and May 2019 VA Form 9.

Service treatment records show complaints of corns on the feet in February 1983 after a road march, but there is no evidence of pes planus during active duty or at discharge. However, the Veteran's DD-214 does show that he served with a military occupational specialty (MOS) of Indirect Fire Infantryman for 3 years and 9 months during active duty. The Board finds that his reports of foot problems as a result of extensive marching and standing during active duty are credible.

Post-service VA treatment records show that since 2005, the Veteran has been complaining of pain, numbness and swelling in the feet and toe nails. In August 2011, he was noted to have a callous on his insteps. In January 2013, he was diagnosed with congenital pes planus. In September 2015, he was diagnosed with flat feet and it was noted that he needed new shoes from prosthetics. On VA examination in September 2018, he was diagnosed with bilateral pes planus and bilateral hallux valgus.

A September 2018 VA examiner opined that, as there was no documentation of pes planus in the service treatment records, the claimed bilateral pes planus was less likely than not incurred in or caused by the claimed in-service injury, event, or illness.

The Board notes that it is symptoms and not treatment that must be considered when rendering an opinion as to the etiology between a current condition and events in service. Additionally, service connection is possible for disabilities first identified after service, and the absence of documented treatment in service or thereafter is not fatal to a service connection claim. 38 C.F.R. § 3.303 (d) (2018); see also Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). The September 2018 examiner did not provide an adequate opinion as to whether the bilateral foot disability (bilateral pes planus) identified after service was related to a disease or injury in service or to the Veteran's statements regarding continuity of symptomatology. A medical opinion based solely on the absence of documentation in record is inadequate and a medical opinion is inadequate if it does not take into account the Veteran's reports of symptoms and history. Dalton v. Peake, 21 Vet. App. 23 (2007). 

The medical evidence of record contains competent evidence of a current diagnosis of a bilateral foot disability. The Veteran's reports of in-service foot pain and a continuity of symptomatology provide evidence that a current bilateral foot disability may be related to service. McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006).

For these reasons, the September 2018 VA examiner's opinion is inadequate and a remand for another VA examination and opinion to determine the etiology of any current foot disability, including bilateral pes panus, is necessary. Barr v. Nicholson, 21 Vet. App. 303 (2007).

2. Entitlement to service connection for a left knee disability is remanded.

3. Entitlement to service connection for a right knee disability is remanded.

The Veteran also contends that he has current left and right knee disabilities, which developed as a result of excessive standing and marching in service. See November 2018 NOD and May 2019 VA Form 9. 

Service treatment records do not contain evidence of a left or right knee disability during active duty or at discharge. However, as noted above, the Veteran's DD-214 does show that he served with a MOS of Indirect Fire Infantryman for 3 years and 9 months during active duty. The Board finds that his reports of knee problems as a result of extensive marching and standing during active duty are credible.

Post-service VA treatment records show the Veteran complained of swollen legs and feet in August 2009, but the symptoms were noted to be related to his high blood pressure. In January 2011, he fell and hurt his hand and knee. In September 2015, he was noted to have swelling and crepitus in the knees and degenerative joint disease (DJD) and told to continue take Naprosyn. In September 2015, he was also noted to have chronic knee pain and was using a cane. In March 2016, he reported falling after his knee gave out. 

On VA examination in September 2018, the Veteran reported leg problems for 4-5 years, but reportedly denied that the issue was with his knees. He complained of pain when sitting and raising his legs and also reported instability and a sensation of tightness. It was also noted that there was lower extremity edema. On physical examination, there was reduced range of motion and reduced muscle strength in the left and right knees. The Veteran also reported that he occasionally used a cane and regularly used a walker, and reported functional impairment in that he could not stand for longer than 2-3 minutes without having to sit down. The Veteran was diagnosed with a left and right knee strain. Notwithstanding the findings and diagnosis given on examination, the September 2018 VA examiner concluded that the Veteran’s knee symptoms were subjective only, that the objective examination was normal, and that there was no objective evidence of a chronic knee condition. As such, the examiner opined that the claimed bilateral knee condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The Board finds that, as the Veteran was diagnosed with a bilateral knee disability, i.e. a bilateral knee strain, and was noted on objective physical examination to have reduced range of motion and reduced muscle strength in both knees, the September 2018 examiner’s findings that there was no objective evidence of a chronic disability are inaccurate, and therefore, his opinion is inadequate for evaluation purposes. 

The medical evidence of record contains competent evidence of a current diagnosis of a bilateral knee disability. The Veteran's reports of in-service knee pain and a continuity of symptomatology provide evidence that a current left and right knee disability may be related to service. McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). The Board also notes that the evidence shows the Veteran had a post-service knee injury in January 2011.

For these reasons, the Board believes that the Veteran should be afforded another VA examination and opinion to determine the etiology of any current left or right knee disability, including a left or right knee strain. Barr v. Nicholson, 21 Vet. App. 303 (2007).

The matters are REMANDED for the following action:

1. Updated treatment records should be obtained and added to the claims file/e-folder.

2. Following completion of the above, afford the Veteran a new VA examination to determine the nature and etiology of any current foot disability, including bilateral pes planus. The claims folder should be made available to the examiner for review in connection with the examination and the examiner should acknowledge such review in the examination report or in an addendum.

The examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that any current foot disability, including bilateral pes planus, originated while the Veteran was serving on active duty or is otherwise related to a disease or injury in service.

A complete rationale should be given for all opinions and conclusions expressed. 

The examiner is advised that the Veteran is competent to report injuries and symptoms, and that his reports must be considered in formulating the requested opinion. If his reports are discounted, the examiner should provide a reason for doing so. 

The examiner is also advised that the absence of evidence in the service treatment records is an insufficient basis, by itself, for a negative opinion.

If the examiner cannot provide an opinion without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made.

3. Then, schedule the Veteran for a new VA examination to determine the nature and etiology of any current left or right knee disability, including a right or left knee strain. The claims folder should be made available to the examiner for review in connection with the examination and the examiner should acknowledge such review in the examination report or in an addendum.

The examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that any current left or right knee disability, including a left or right knee strain, originated while the Veteran was serving on active duty or is otherwise related to a disease or injury in service.

A complete rationale should be given for all opinions and conclusions expressed. 

The examiner is advised that the Veteran is competent to report injuries and symptoms, and that his reports must be considered in formulating the requested opinion. If his reports are discounted, the examiner should provide a reason for doing so. 

The examiner is also advised that the absence of evidence in the service treatment records is an insufficient basis, by itself, for a negative opinion.

(Continued on the next page)

 

If the examiner cannot provide an opinion without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made.

4. After completion of the above and any other development deemed necessary, readjudicate the Veteran's remaining claims for service connection based on the new evidence of record. If any benefit sought on appeal is not granted in full, the Veteran and his representative should be issued a supplemental statement of the case and provided an opportunity to respond. The case should then be returned to the Board for further appellate consideration, if otherwise in order.

 

 

KELLI A. KORDICH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board F. Yankey, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.